328 S.E.2d 492

**GEBR. EICKHOFF MASCHINENFABRIK UND EISENGIEBEREI mbH, a foreign corporation, and Eickhoff Corporation, a corporation**

v.

**Honorable Larry V. STARCHER, Chief Judge, Circuit Court of Monongalia County, Consolidation Coal Company, a corporation, Virgil J. Casini, Jr. and Jacqueline Casini Eickhoff National Mine Company, a corporation, and National Mine Service Company, a corporation.**

No. 16562.

Supreme Court of Appeals of West Virginia.

March 22, 1985.

John Winship Read and Ellen L. Surloff, Kirkpatrick & Lockhart, Pittsburgh, Pa., Joseph A. Wallace, Wallace, Ross & Gibson, Elkins, for petitioners.

Robert M. Steptoe, Jr., Steptoe & Johnson, Clarksburg, Clark B. Frame, Wilson, Frame & Metheney, M. Jane Mainelle, Morgantown, for respondents.

McGRAW, Justice:

In this original proceeding in mandamus the petitioners, Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH, a West German corporation, and Eickhoff Corporation, its wholly-owned American subsidiary, seek to compel vacation of a pretrial discovery order entered by Chief Judge Larry V. Starcher of the Circuit Court of Monongalia County. Their contention is that this order, requiring compliance with the West Virginia Rules of Civil Procedure, violates the terms of the Multilateral Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 [reprinted in 28 U.S.C.A. § 1781 (Supp.1984)] ["Hague Evidence Convention"], to which the United States and the Federal Republic of Germany are both signatories, see 28 U.S.C.A. § 1781, at 88–89 (Supp.1984). First, the petitioners maintain that the Hague Evidence Convention provides the exclusive means by which evidence situated in the Federal Republic of Germany may be obtained by American litigants. Second, the petitioners argue that, even if the Convention does not supply the sole mechanism for obtaining evidence from West German nationals, the principle of international comity mandates first resort to those procedures prior to the application of American discovery rules. Following a brief recitation of the circumstances that form the basis for this proceeding, we will address each of these issues.

I

On April 20, 1983, respondents Virgil J. Casini, Jr., and his wife, Jacqueline, filed an action against respondent Consolidation Coal Company, seeking to recover damages resulting from an accident in which Casini's right arm was severed while operating longwall mining machinery in Consolidation's Blackville No. 2 mine in Monongalia County. On September 12, 1983, the Casinis amended their complaint to assert claims against petitioner Eickhoff Corporation for allegedly defective design and manufacture of this machinery. On July 9, 1984, leave was granted by the circuit court for Consolidation to file a third-party complaint against Gebr. Eickhoff for its role in the design and manufacturer of the machinery.

On September 24, 1984, Consolidation served interrogatories in aid of jurisdiction on Gebr. Eickhoff. On October 23, 1984, Gebr. Eickhoff filed objections to Consolidation's interrogatories as in violation of the terms of the Hague Evidence Convention. On October 25, 1984, Consolidation responded with a motion to compel answer to its interrogatories. On December 3, 1984, Consolidation served a final set of interrogatories, a request for the production of documents, and a motion to compel production of witnesses by Gebr. Eickhoff for deposition. Gebr. Eickhoff continued to object to these discovery requests based upon the applicability of the procedures under the Hague Evidence Convention. On December 3, 1984, the circuit court entered an order finding the requisite minimum contacts to subject Gebr. Eickhoff to the personal jurisdiction of the court. On December 10, 1984, the court entered a pretrial order providing, in relevant part, that:

(4) The Court having previously ruled that it has jurisdiction over the defendant Gebr. Eickhoff Maschinenfabrik und Eisengieberei mbH, all discovery in this civil action shall be conducted pursuant to the West Virginia Rules of Civil Procedure,[1] except as follows:

---

1. We note that, with respect to securing depositions abroad, Rule 28(b) of the West Virginia

Rules of Civil Procedure provides that:

(a) All interrogatories, requests for production of documents, and depositions upon written interrogatory directed to Gebr. Eickhoff Maschinenfabrik und Eisengieberei mbH shall be propounded not only in English but also in German;

(b) All depositions of officers, employees, and agents of Gebr. Eickhoff shall be taken pursuant to Notice between January 3 and February 11, 1985. In the event that any officer, employee, or agent of Gebr. Eickhoff Maschinenfabrik und Eisengieberei mbH who would normally be deposed in the Republic of West Germany, is unable or unwilling to be deposed within the Republic of West Germany, then such person shall be deposed outside the borders of the Republic of West Germany at a location to be mutually agreed upon by counsel for Consolidation and Gebr. Eickhoff;

(c) In the event that Gebr. Eickhoff Maschinenfabrik und Eisengieberei mbH fails or refuses to make discovery as required by the West Virginia Rules of Civil Procedure, except as modified herein, evidence proffered at trial by Gebr. Eickhoff of the subjects about which discovery is sought shall be precluded[.]

## II

The Multilateral Convention on the Taking of Evidence Abroad in Civil or Commercial Matters was forged in 1968 at the Eleventh Session of the Hague Conference on Private International Law. *See* 23 U.S.T. at 2555, 28 U.S.C.A. § 1781, at 88. It was entered into force for the United States on October 7, 1972, *see Id.*, 28 U.S.C.A. § 1781, at 88, and for the Federal Republic of Germany on June 26, 1979, *see* Shemanski, *Obtaining Evidence in the Federal Republic of Germany: The Impact of the Hague Evidence Convention on German-American Judicial Cooperation*, 17 Int'l Law. 465, 465 (1983).[2] The primary purpose of the Convention was "to bridge differences between the common law and civil law approaches to the taking of evidence abroad." [3] Letter of Submittal from Secretary of State William P. Rogers to the President Regarding the Evidence Convention, S.Exec.Doc. A, at V, 92d Cong., 2d Sess. (Feb. 1, 1972), *reprinted in*

In a foreign country, depositions may be taken (1) on notice before a person authorized to administer oaths in the place in which the examination is held, either by the law thereof or by the law of the United States or of this State, or (2) before a person commissioned by the court, and a person so commissioned shall have the power by virtue of his commission to administer any necessary oath and take testimony, or (3) pursuant to a letter rogatory. A commission or a letter rogatory shall be issued on application and notice and on terms that are just and appropriate. It is not requisite to the issuance of a commission or a letter rogatory that the taking of the deposition in any other manner is impracticable or inconvenient; and both a commission and a letter rogatory may be issued in proper cases. A notice or commission may designate the person before whom the deposition is to be taken either by name or descriptive title. A letter rogatory may be addressed "To the Appropriate Authority in [here name the country]," Evidence obtained in response to a letter rogatory need not be excluded merely for the reason that it is not a verbatim transcript or that the testimony was not taken under oath or for any similar departure from the requirements for depositions taken within the State under these rules.

**2.** Currently, in addition to the United States and the Federal Republic of Germany, the Convention has been entered into force in Barbados, Cyprus, Czechoslovakia, Denmark, Finland, France, Israel, Italy, Luxenburg, Netherlands, Norway, Portugal, Singapore, Sweden, and the United Kingdom. *See* 7 Martindale-Hubbell Law Directory, pt. 7, at 12, 14–21 (1985).

**3.** In addition to the more abstract notion of interference with foreign sovereignty, there are often practical considerations involved in obtaining evidence abroad pursuant to domestic rules of civil procedure. For example, one commentator has noted that:

> Civil-law countries do not view a deposition as a private, relatively informal matter between the parties. A deposition in aid of a legal proceeding is a public matter, requiring the participation and consent of the courts. The litigant whose activities breach the judicial sovereignty of the host nation is placed in a position analagous [sic] to being in contempt of a United States court and may be subject to criminal penalties. [Footnotes omitted].

Note, *Obtaining Testimony Outside the United States: Problem for the California Practitioner*, 29 Hastings L.J. 1237, 1244 (1978).

12 *Int'l Legal Materials* 324 (1973); *see also* Edwards, *Taking of Evidence Abroad in Civil or Commercial Matters,* 18 Int'l & Comp.L.Q. 618, 646–47 (1969). For example, four significant differences between the American common law and German civil law approach to the taking of evidence are that (1) the examination of witnesses is usually conducted by the judge, and not by the attorneys, under German law; (2) witnesses are normally not sworn when testifying under German law; (3) no verbatim transcript of the testimony is generally made in German civil proceedings; and, (4) there are no strict rules of evidence under German law, a German judge being permitted to consider any and all evidence under the principle of *freie Beweiswurdingung,* or "discretionary evaluation of evidence." *See* Shemanski, *supra* at 468–69; *see also* Platto, *Taking Evidence Abroad for Use in Civil Cases in the United States—A Practical Guide,* 16 Int'l Law. 575, 581–85 (1982).

In an attempt to accommodate these types of disparities in methodology with respect to the gathering of evidence,[4] the Hague Evidence Convention provides a tripartite division [5] of procedures for securing evidence from signatory states. First, the Convention provides that, "[A] judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another contracting State, by means of a Letter of Request,[6] to obtain evidence, or to perform some other judicial act." Hague Evidence Convention, Ch. I, art. 1, 23 U.S.T. at 2557, 28 U.S.C.A. § 1781, at 83. Second, the Convention provides that, "A diplomatic officer or consular agent of a Contracting State may, in the territory of another Contracting State and within the area where he exercises his functions ... take the evidence, without compulsion, of nationals of the State in which he exercises his functions ... in aid of proceedings commenced in the courts of a State which he represents...." Hague Evidence Convention, Ch. II, art. 16, 23 U.S.T. at 2564–65, 28 U.S.C.A. § 1781, at 85. Finally, the Convention provides that, "[A] person duly appointed as a commissioner for the purpose may, without compulsion, take evidence in the territory of a Contracting State in aid of proceedings commenced in the courts of another Contracting State...." Hague Evidence Convention, Ch. II, art. 17, 23 U.S.T. at 2565, 28 U.S.C.A. § 1781, at 85. The precise procedures to be followed in pursuing these avenues of evidence procurement, as well as several important limitations on their utility, are set forth in the provisions of the Convention, and in declarations and reservations made by signatory

---

**4.** For general discussions of the problems of obtaining evidence abroad, *see* Platto, *Taking Evidence Abroad for Use in Civil Cases in the United States—A Practical Guide,* 16 Int'l Law. 575 (1982); Note, *Obtaining Testimony Outside the United States: Problem for the California Practitioner, supra* note 4.

**5.** These three methods of obtaining evidence abroad correspond to those provided in Rule 28(b) of the Federal Rules of Civil Procedure, which provides that:

In a foreign country, depositions may be taken (1) on notice before a person authorized to administer oaths in the place in which the examination is held, either by the law thereof or by the law of the United States, or (2) before a person commissioned by the court, and a person so commissioned shall have the power by virtue of his commission to administer any necessary oath and take testimony, or (3) pursuant to a letter rogatory. A commission or a letter rogatory shall be issued on application and notice and on terms that are just and appropriate. It is not requisite to the issuance of a commission or a letter rogatory that the taking of the deposition in any other manner is impracticable or inconvenient; and both a commission and a letter rogatory may be issued in proper cases. A notice or commission may designate the person before whom the deposition is to be taken either by name or descriptive title. A letter rogatory may be addressed "To the Appropriate Authority in [here name the country]." Evidence obtained in response to a letter rogatory need not be excluded merely for the reason that it is not a verbatim transcript or that the testimony was not taken under oath or for any similar departure from the requirements for depositions taken within the United States under these rules.

*See also* Note, *Taking Evidence Outside of the United States,* 55 B.U.L.Rev. 368, 369–79 (1975).

**6.** A model for Letters of Request recommended for use in applying the Hague Evidence Convention can be found at 28 U.S.C.A. § 1781, at 100–02.

states at the time of their signature. *See* Hague Evidence Convention, Ch. I, arts. 1–14, 23 U.S.T. at 2557–64, 28 U.S.C.A. § 1781, at 83–85 (letters of request); Hague Evidence Convention, Ch. II, arts. 15–22, 23 U.S.T. at 2564–68, 28 U.S.C.A. § 1781, at 85–86 (taking of evidence by diplomatic officers, consular agents, and commissioners); Hague Evidence Convention, 28 U.S.C.A. § 1781, at 88–100 (declarations and reservations of signatory states).

### III

█ Courts which have considered the issue have uniformly held that the Hague Evidence Convention does not provide the exclusive means of obtaining evidence abroad by American litigants. *See Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 42, 48–50 (D.D.C. 1984); *McLaughlin v. Fellows Gear Shaper Co.*, 102 F.R.D. 956, 958–59 (E.D.Pa. 1984); *Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919–20 (E.D.Pa.1984); *Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. 503, 519–24 (N.D.Ill.1984); *Murphy v. Reifenhauser KG Maschinenfabrik*, 101 F.R.D. 360, 361–63 (D.Vermont 1984); *Philadelphia Gear Corp. v. American Pfauter Corp.*, 100 F.R.D. 58, 61 (E.D. Pa.1983); *Schroeder v. Lufthansa German Airlines*, 18 Av.Cas. (CCH) 17,222, at 17,223–24 (N.D.Ill.1983); *Lasky v. Continental Products Corp.*, 569 F.Supp. 1227, 1228 (E.D.Pa.1983); *Angulo v. Kedzep Ltd.*, 29 B.R. 417, (D.C.S.D.Tex.1983); *Pierburg GmbH & Co. KG v. Superior Court*, 137 Cal.App.3d 238, 244, 186 Cal.Rptr. 876, 880 (1982); *Volkswagenwerk Aktienge-*

*sellschaft v. Superior Court*, 123 Cal. App.3d 840, 859, 176 Cal.Rptr. 874, 885–86 (1981); *Vincent v. Ateliers de la Motobecane, S.A.*, 193 N.J.Super. 716, 723, 475 A.2d 686, 690 (1984); *Th. Goldschmidt A.G. v. Smith*, 676 S.W.2d 443, 445 (Tex.Ct. App.1984).

█ Several reasons have been advanced for the nonexclusivity of the provisions of the Hague Evidence Convention. First, as the court stated in *Volkswagenwerk Aktiengesellschaft v. Superior Court*, 123 Cal.App.3d at 856, 176 Cal.Rptr. at 883–84, "Once a foreign corporation is properly subject to a court's jurisdiction, it (like any other party validly joined in a local lawsuit) may with propriety be ordered to act or to refrain from acting, in matters relevant to the lawsuit, at places outside the state." [7] *See also Schroeder v. Lufthansa German Airlines*, 18 Av.Cas. (CCH) at 17,223; *Lasky v. Continental Products Corp.*, 569 F.Supp. at 1228. Second, the implications of subjection to personal jurisdiction extend to discovery matters,[8] as the court in *Volkswagenwerk*, 123 Cal.App.3d at 856–57, 176 Cal.Rptr. at 884, noted, " 'a defendant who has sufficient contacts with the forum state to give it personal jurisdiction can consistently with due process be required, on pain of default, to conform to that state's discovery procedures as essential incidents of the exercise of jurisdiction.' (Note, Developments in the Law—Discovery (1961) 74 Harv.L.Rev. 940, 1050)." *See also Schroeder v. Lufthansa German Airlines*, 18 Av.Cas. (CCH) at 17,223; *Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. at 521–24; *Philadelphia*

---

**7.** Ultimately, as is recognized in Restatement (Second) of Foreign Relations Law of the United States § 39(1) (1965):

A state having jurisdiction to prescribe or to enforce a rule of law is not precluded from exercising its jurisdiction solely because such exercise requires a person to engage in conduct subjecting him to liability under the law of another state having jurisdiction with respect to that conduct.

*See, e.g., United States v. Vetco, Inc.*, 644 F.2d 1324, 1330–313, *modified*, 691 F.2d 1281 (9th Cir.1981); *Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 341–42 (10th Cir.1976); *In re Grand Jury Proceedings*, 532 F.2d 404, 407–09 (5th Cir.1976); *United States v. First National*

*City Bank*, 396 F.2d 897, 901–05 (2d Cir.1968); *S.E.C. v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 115–19 (S.D.N.Y.1981); *In re Uranium Antitrust Litigation*, 480 F.Supp. 1138, 1145–49 (N.D. Ill.1979); *American Industrial Contracting, Inc. v. Johns-Mansville Corp.*, 326 F.Supp. 879, 880 (W.D.Pa.1971).

**8.** We note that, as a general rule, "The local law of the forum governs ... pre-trial practice, including the taking and use of depositions, discovery and penalties for refusal to comply with proper request for information...." Restatement (Second) of Conflict of Laws § 127 comment a(5) (1971).

*Gear Corp. v. American Pfauter Corp.,* 100 F.R.D. at 61. Third, as the court noted in *Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. at 49, *quoting Compagnie Francaise d'Assurance v. Phillips Petroleum Co.,* 81 Civ. 4463–CLB, slip op. at 10–12 (S.D.N.Y. Jan. 25, 1983):

> Nothing in the legislative history of the Hague Convention nor in the Congressional proceedings at the time of its adoption, suggests that Congress intended to replace, restrict, modify or repeal the Federal Rules. Indeed, Philip Amram, a member of the United States delegation to the 1968 session of the Convention ... stated, it would effect 'no major changes in U.S. procedure [nor require any] changes in U.S. legislation or rules.' Amram, *United States Ratification of the Hague Convention on the Taking of Evidence Abroad,* 67 Am.J. Int'l L. 104, 105 (1973).

*See also Graco, Inc. v. Kremlin, Inc.,* 101 F.R.D. at 519, n. 19; *but see* Comment, *The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters: The Exclusive and Mandatory Procedures for Discovery Abroad,* 132 U.Pa.L.Rev. 1461, 1475–79 (1984). Fourth, in *Laker Airways Ltd.,* 103 F.R.D. at 49, *quoting Compagnie Francaise d'Assurance v. Phillips Petroleum Co.,* 81 Civ. 4463–CLB, slip op. at 10–12, the court stated that:

> Treaties should be construed so as to effect their purposes, *Reed v. Wiser,* 555 F.2d 1079 (2d Cir.), *cert. denied,* 434 U.S. 922 [98 S.Ct. 399, 54 L.Ed.2d 279] (1977), and to be as consistent, insofar as possible, with coexisting statutes, *Washington v. Fishing Vessel Assn.,* 443 U.S. 658, 690 [99 S.Ct. 3055, 3076, 61 L.Ed.2d 823] (1979). The goal of the Hague Convention was to facilitate and increase the exchange of information between nations. It would not serve this goal to transform its provisions into a means to frustrate the discovery process.

*See also Murphy v. Reifenhauser KG Maschinenfabrik,* 101 F.R.D. at 363. Fifth, there are enormous practical difficulties associated with the procedures under the Hague Evidence Convention,[9] as the court in *Pain v. United Technologies Corp.,* 637 F.2d 775, 788–90 (D.C.Cir.1980), noted:

> Although the Hague Evidence Convention provides a mechanism whereby the recipient nation's executing authority is required to assist an American court with such compulsory force as its own courts can exercise in a pretrial evidentiary situation, numerous exceptions to this international obligation exist, which potentially bar this device from being executed at all. For example, foreign judicial cooperation may be withheld if the discovery assistance requested is deemed prejudicial to state sovereignty. Furthermore, even when discovery abroad is available, the *breadth* of evidence ordinary expected from a full-fledged American-style deposition might be constricted for any number of reasons: the foreign state's own procedures might limit or foreclose cross-examination, full participation of counsel might not be allowed, or a verbatim record might not result, thus limiting the admissibility of the testimony in an American court. The scope of foreign privilege might prove broader under the letter rogatory procedure than under either local law or American law, and in some cases, official translators might be required for each piece of paper involved. Regardless of whether or not foreign evidence would be as fully available were trial to be conducted here, there can be little doubt that the cost to the litigants of employing such procedures would be exceedingly high. [Footnotes omitted].

*See also Murphy v. Reifenhauser KG Maschinenfabrik,* 101 F.R.D. at 361. Finally, with particular reference to obtaining evidence in the Federal Republic of Germany, actions of the German govern-

---

9. As burdensome as the procedures under the Hague Evidence Convention may appear on the surface, however, they are unquestionably a substantial improvement over the chaotic state of affairs that existed prior to their development. *See* Note, *Obtaining Testimony Outside the United States: Problem for the California Practitioner, supra* note 4, at 1251–55.

ment have significantly diminished the efficacy of the procedures under the Hague Evidence Convention,[10] as the court noted in *Laker Airways Ltd. v. Pan American World Airways*, 103 F.R.D. at 48:

> The principal methods provided for discovery purposes under the Convention are letters of judicial request, the taking of testimony by consular officials, and the taking of testimony by commissioners. On their face, these provisions do not appear to be ineffective. However, the government of the Federal Republic of Germany has rendered them entirely ineffective, at least in the context of the present proceeding.
>
> That government has made a declaration under Article 23 of the Convention that it will not execute letters of request issued for the purpose of obtaining discovery documents. That government has also made a declaration under Article 33 of the Convention that it will not allow its nationals to give testimony before the consular officials of the forum state or before commissioners appointed either by the requesting or the executing court, and that it will lend no judicial assistance

in such a consular or commissioner proceeding. That government has finally made it clear, through a series of notes verbale, that in case of a request by the United States consular officials in Germany it would neither compel such a person to appear nor, should he appear voluntarily, to compel him to provide any information.

> In short, the German government will not allow the production in Germany of documents; it will permit no evidence to be taken under compulsion before a consular officer or a commissioner; and it reserves the right to refuse a judicial letter of request if, in its sole discretion, a response would be contrary to the sovereignty or security interests of the Federal Republic. [Footnotes omitted].

*See also Murphy v. Reifenhauser KG Maschinenfabrik*, 101 F.R.D. at 361; *Philadelphia Gear Corp. v. American Pfauter Corp.*, 100 F.R.D. at 60–61; *Lasky v. Continental Products Corp.*, 569 F.Supp. at 1229; *Volkswagenwerk Aktiengesellschaft v. Superior Court*, 123 Cal.App.3d at 853–55, 176 Cal.Rptr. at 882–83.[11]

---

**10.** For a rather thorough discussion of West German declarations and reservations to the Hague Evidence Convention, *see* Shemanski, *Obtaining Evidence in the Federal Republic of Germany: The Impact of The Hague Evidence Convention on German-American Judicial Cooperation*, 17 Int'l Law. 465, 469–480 (1983).

**11.** An additional rationale advanced for the nonexclusivity of the provisions of the Hague Evidence Convention which we find without merit involves the interpretation of Article 27 of the Convention, which provides that:

> The provisions of the present Convention shall not prevent a contracting state from—
> a) declaring that Letters of Request may be transmitted to its judicial authorities through channels other than those provided for in Article 2;
> b) permitting, by internal law or practice, any act provided for in this Convention to be performed upon less restrictive provisions;
> c) permitting, by internal law or practice methods of taking evidence other than those provided for in this Convention;

In *Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. 503, 520–21 (N.D.Ill.1984); *Lasky v. Continental Products Corp.*, 569 F.Supp. 1227, 1228 (E.D.Pa. 1983); *Pierburg GmbH & Co. KG v. Superior Court*, 137 Cal.App.3d 238, 244, 186 Cal.Rptr. 876, 880 (1982); and *Volkswagenwerk Aktiengesellschaft v. Superior Court*, 123 Cal.App.3d 840,

859, 176 Cal.Rptr. 874, 886 (1981), the courts interpreted this provision as permitting liberalization not only of internal discovery rules, but also of discovery procedures in other signatory countries. We agree with the court in *Philadelphia Gear Corp. v. American Pfauter Corp.*, 100 F.R.D. 58, 60 (E.D.Pa.1983), that "While the language of Article 27 is not conclusive, when this section is viewed in light of the underlying policies it permits only the country in which the evidence is being sought to supplement unilaterally the convention procedures with its internal rules." The key language, in our view, is "internal law or practice," limiting the scope of Article 27 to the liberalization of internal discovery rules. Evidence in support of this interpretation of Article 27 is found in the comments of Philip W. Amram, a member of the United States Delegation to the Eleventh Session of the Hague Conference and Rapporteur of the Convention on Taking Evidence Abroad, who has stated that:

> Article 27 ... preserve[s] for each signatory party all provisions of its internal law that are more favorable to, and grant more generous assistance to foreign courts and litigants than the methods prescribed in the Convention. This gives the foreign court or litigant the better of two possible worlds. If the domestic law of the requested state is more beneficial and more flexible in favor of the foreign liti-

In addition to the persuasiveness of these factors on the issue of the exclusivity of the provisions of the Hague Evidence Convention, we note that the language of the document itself supports the conclusion that its framers' intention was that adherence to its procedures would be largely discretionary. First, the preamble to the Convention provides that:

The States signatory to the present Convention,

Desiring to *facilitate* the transmission and execution of Letters of Request and to further the *accommodation* of the different methods which they use for this purpose,

Desiring to improve mutual judicial *cooperation* in civil or commercial matters,

Have resolved to conclude a Convention to this effect and have agreed upon the following provisions—

Hague Evidence Convention, Preamble, 23 U.S.T. at 2557, 28 U.S.C.A. § 1781, at 83 (Emphasis added). Second, as to the letters rogatory method of obtaining evidence abroad, the Convention provides that, "In civil or commercial matters a judicial authority of a Contracting State *may* ... request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence...." Hague Evidence Convention, Ch. I, art. 1, 23 U.S.T. at 2557, 28 U.S.C.A. § 1781, at 83 (Emphasis added). Third, as to the diplomatic officer or consular agent method of obtaining evidence abroad, the Convention provides that, "A diplomatic officer or consular agent of a Contracting State *may* ... take the evidence, without compulsion, of nationals of the State in which he exercises his functions...." Hague Evidence Convention, Ch. II, art. 16, 23 U.S.T. at 2564–65, 28 U.S.C.A. § 1781, at 85 (Emphasis added). Finally, as to the appointed commissioner method of obtaining evidence abroad, the Convention provides that, "[A]

person duly appointed as a commissioner ... *may*, without compulsion, take evidence in the territory of a Contracting State in aid of proceedings commenced in the courts of another Contracting State ...." Hague Evidence Convention, Ch. II, art. 17, 23 U.S.T. at 2565, 28 U.S.C.A. § 1781, at 85 (Emphasis added).

In contrast to the discretionary language [12] utilized in the Hague Evidence Convention, language in the earlier Multilateral Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 165 [reprinted in 28 U.S.C.A.Fed. R.Civ.P. 4 (Supp.1984)] ["Hague Service Convention"] is clearly indicative of its mandatory character. For example, the preamble to the Hague Service Convention provides that:

The States signatory to the present Convention,

Desiring to create appropriate means to *ensure* that judicial and extrajudicial documents to be served abroad *shall* be brought to the notice of the addressee in sufficient time,

Desiring to improve the organization of mutual judicial *assistance* for that purpose by simplifying and expediting the procedure,

Have resolved to conclude a Convention to this effect and have agreed upon the following provisions—

Hague Service Convention, 20 U.S.T. at 362, 28 U.S.C.A.Fed.R.Civ.P. 4, at 73 (Emphasis added). Further, unlike the operative provisions of the Hague Evidence Convention, the operative provision of the Hague Service Convention states that, "The present Convention *shall* apply in *all* cases, to civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Service Convention, Ch. I, art. 1, 20

---

gant than the Convention techniques, those more liberal rules of the domestic law will remain available to the foreign litigant and the requesting authority.
Amram, *United States Ratification of the Hague Convention on the Taking of Evidence Abroad,* 67 Am.J. Int'l L. 104, 107 (1973).

**12.** An elementary principle of statutory construction is that the word "may" is inherently permissive in nature and connotes discretion. *See Hodge v. Ginsberg,* 172 W.Va. 17, 303 S.E.2d 245, 250 (1983); 82 C.J.S. *Statutes* § 380(a) (1953).

U.S.T. at 361, 28 U.S.C.A.Fed.R.Civ.P. 4, at 73 (Emphasis added). *See DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 287–89 (3d Cir.1981); *Dr. Ing. H.C.F. Porsche, AG v. Superior Court*, 123 Cal. App.3d 755, 760–62, 177 Cal.Rptr. 155, 157–59 (1981); *Low v. Bayerische Motorenwerke*, 88 A.D.2d 504, 505, 449 N.Y.S.2d 733, 735 (1982).[13]

### IV

Although there is unanimity on the issue of the nonexclusivity of the provisions of the Hague Evidence Convention, there is a division of opinion on the applicability of the principle of international comity. Every state court which has addressed the issue has concluded that the principle of international comity compels first resort to the provisions of the Hague Evidence Convention prior to utilization of their own rules of civil procedure. *See Pierburg GmbH & Co. KG v. Superior Court*, 137 Cal.App.3d at 242–45, 186 Cal.Rptr. at 879–81; *Volkswagenwerk Aktiengesellschaft v. Superior Court*, 123 Cal.App.3d at 857–59, 176 Cal.Rptr. at 884–85; *Vincent v. Ateliers de la Motobecane, S.A.*, 193 N.J.Super. at 721–24, 475 A.2d at 689–91; *Th. Goldschmidt A.G. v. Smith*, 676 S.W.2d at 445. On the other hand, there is a division among federal courts which have dealt with this question, with four federal courts concluding that the principle of international comity dictates deference to the procedures under the Hague Evidence Convention, *see Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. at 51; *General Electric Co. v. North Star International, Inc.*, No. 83 C 0838 at 5 (N.D.Ill. Feb. 21, 1984); *Philadelphia Gear Corp. v. American Pfauter Corp.*, 100 F.R.D. at 60–61; *Schroeder v. Lufthansa German Airlines*, 18 Av.Cas. (CCH) at 17,-

223–24, and three federal courts concluding that American litigants need not first resort to the procedures under the Hague Evidence Convention prior to proceeding under the applicable rules of civil procedure, *see Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. at 517–24; *Murphy v. Reifenhauser KG Maschinenfabrik*, 101 F.R.D. at 362–63; *Lasky v. Continental Products Corp.*, 569 F.Supp. at 1228–29.

In *Volkswagenwerk Aktiengesellschaft v. Superior Court*, 123 Cal.App.3d at 857, 176 Cal.Rptr. at 884, the California court, although noting that a foreign national is ultimately subject to a state court's jurisdictional power to compel discovery abroad incidental to the court's personal jurisdiction over the foreign national, recognized that:

> On the other hand, in cases such as this American courts traditionally and properly recognized the countervailing force of international comity: The concept that the courts of one sovereign state should not, as a matter of sound international relations, require acts or forbearances within the territory, and inconsistent with the internal laws, of another sovereign state unless a careful weighing of competing interests and alternative means makes clear that the order is justified. Rulings based in this concept of international comity are dictated not by technical principles of jurisdiction of the parties to or subject-matter of particular lawsuits, but rather by exercise of judicial self-restraint in furtherance of policy considerations which transcend individual lawsuits.... Particularized to discovery matters it is ... "a policy of avoiding international discovery methods productive of friction with the procedures of

---

**13.** In support of a contention that ordering discovery abroad would violate West German sovereignty, the petitioners direct the Court's attention to an amicus brief filed by the West German government in *In re Anschuetz & Co.*, 754 F.2d 602 (5th Cir.1985), which stated that:

> Compliance in Germany with the order of the U.S. District Court mandating the taking of oral dispositions in Kiel, Germany, and the production of documents located in Kiel, Germany would be a violation of German sover-

eignty unless the order is transmitted and executed by the method of Letter of Request under the Evidence Convention.

Brief for the Federal Republic of Germany as Amicus Curiae at 8. Although the concept that state sovereignty is coextensive with multilateral treaties to which the state in question is signatory is a curious one, we believe that mandating first resort to such treaties should satisfy the concerns raised by the West German government.

host nations." [*Volkswagenwerk Aktiengesellschaft v. Superior Court*, 33 Cal.App.3d 503, 508, 109 Cal.Rptr. 219, 222 (1973) ]. [Citation omitted].

In the *Volkswagenwerk* court's view, "[T]he Hague Convention establishes not a fixed rule but rather a minimum measure of international cooperation." 123 Cal. App.3d at 859, 176 Cal.Rptr. at 886. *See also Pierburg GmbH & Co. KG v. Superior Court*, 137 Cal.App.3d at 241–44, 186 Cal.Rptr. at 878–81. Similarly, in *Th. Goldschmidt A.G. v. Smith*, 676 S.W.2d at 444, the Texas court, noting that, "It is clear that a state court order 'must yield when it is inconsistent with or impairs the policy or provisions of a treaty or of an international compact or agreement. . . .' *United States v. Pink*, 315 U.S. 203, 231, 62 S.Ct. 552, 566, 86 L.Ed.2d 796 (1942)," held that, "[T]he trial court should proceed under the Convention until a weighing of interests makes it clear that an order authorizing actions outside the Convention is necessary to prevent an impasse," 676 S.W.2d at 445. *See also Pierburg GmbH & Co. KG v. Superior Court*, 137 Cal.App.3d at 244, 186 Cal.Rptr. at 880. Finally, in *Vincent v. Ateliers de la Motobecane, S.A.*, 193 N.J. Super. at 723, 475 A.2d at 690, the New Jersey court, confronted with a third-party plaintiff, Vincent, in a products liability action, who sought to avoid compliance with the provisions of the Hague Evidence Convention in seeking discovery from the French manufacturer of an allegedly defective moped, noted, "Until Vincent makes proper application, we will not know exactly what discovery, if any, it can obtain." As the other state courts recognized, however, the New Jersey court further noted that, "the trial court will still be open to Vincent for appropriate relief if its good faith efforts to acquire the desired information [under the Hague Evidence Convention] are defeated." 193 N.J.Super. at 723, 475 A.2d at 690.

In the view of the federal district court in *Philadelphia Gear Corp. v. American Pfauter Corp.*, 100 F.R.D. at 60:

To allow the forum court to supplement the convention with its own practices would not promote uniformity in the gathering of evidence nor generate a spirit of cooperation among signatories to the treaty. Instead, each state would be free to replace the convention procedures with its own practices at will. Obviously, to permit one sovereign to foist its legal procedures upon another whose internal rules are dissimilar would run afoul of the interests of sound international relations and comity. [Footnote omitted].

Although the *Philadelphia Gear* court therefore concluded that, "a party seeking evidence abroad must first attempt to obtain it pursuant to the Hague Evidence Convention, rather than by way of the Federal Rules of Procedure," 100 F.R.D. at 60 n. 3, it also recognized that "in the event that such efforts prove futile, further resort may be sought from this court," 100 F.R.D. at 61. The balancing of interests between the forum court and the foreign state is also reflected in the order of the court in *Laker Airways Ltd. v. Pan American World Airways*, 103 F.R.D. at 51, which stated that:

This Court, in the exercise of its discretion, and in accordance with the principles of comity, will defer entry of an order on plaintiff's motion to compel [production of documents] for an additional thirty days . . . and will also delay the deposition of Abraham and Culman for the same period. This delay should give the German authorities both the time and the opportunity to decide whether they wish to provide cooperation within the spirit of both the Hague Convention and of comity between nations. It will also allow the parties to attempt to come to an agreement regarding reasonable parameters of the discovery in Germany, both documentary and by way of deposition. [Footnote omitted].

Finally, in *Schroeder v. Lufthansa German Airlines*, 18 Av.Cas. (CCH) at 17,224, the court noted that an order mandating initial resort to the procedures under the Hague Evidence Convention "would not subject plaintiff to the vagaries of a foreign government's whims." In the final analysis, the court in *Schroeder*, 18 Av.

Cas. (CCH) at 17,224, stated that, "The Convention calls for cooperative and expeditious responses, and this Court will expect Lufthansa to do all within its powers to secure such. Moreover, the sanctions and rules of this Court may be imposed if the requests made under the Convention are not fulfilled in a satisfactory manner."

Other federal courts, however, have refused to accord such deference to the provisions of the Hague Evidence Convention. For example, although the court in *Lasky v. Continental Products Corp.,* 569 F.Supp. at 1228, recognized that, "Principles of international comity require this Court to exercise restraint in using its powers to compel parties to take actions which may be in violation of the laws of a foreign state, or which may impinge upon the sovereignty of a foreign state," it held that because "it is not clear that compliance with the plaintiffs' discovery request [for answers to interrogatories and for the production of documents] will require a violation of German law or impinge upon the sovereignty of the Federal Republic of Germany ... it is inappropriate ... to preclude the plaintiffs from conducting any discovery except that obtainable through the procedures provided in the Hague Convention," 569 F.Supp. at 1229. In addition to the failure to assert violation of foreign laws or intrusion into foreign sovereignty, the court in *Murphy v. Reifenhauser KG Maschinenfabrik,* 101 F.R.D. at 363, referred to the futility in deferring to ostensibly unproductive procedures under the Hague Evidence Convention, such as requests for the production of documents where such discovery is expressly prohibited by the West German reservations to the Convention,[14] stating that:

[C]omity is largely a function of relative interests as between overlapping jurisdictions.

"Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Hilton v. Guyot,* 159 U.S. 113, 163–64, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). We conclude that comity in this sense does not require plaintiff to proceed first under the Convention in this case, particularly at this relatively late stage of discovery, and particularly where it appears that a request for production of documents under the Convention would be futile.

Finally, in *Graco, Inc. v. Kremlin, Inc.,* 101 F.R.D. at 517–24, the court emphasized the jurisdictional and practical considerations which justify noncompliance with the terms of the Hague Evidence Convention. The court initially noted that:

Two important purposes of an international convention of this type relate to discovery of non-parties, and would justify the Convention's existence regardless of how the Convention is deemed to apply with respect to parties before the court. First, a non-party witness may be willing to be deposed at home, but may be unwilling to travel to the country in which the litigation is proceeding. Since

**14.** Despite its various declarations and reservations to the Hague Evidence Convention, however, the West German government has indicated, in an amicus brief filed in *In re Anschuetz & Co.,* 754 F.2d 602 (5th Cir.1985), that:
a) its courts are guided by a spirit of cooperation when executing requests for judicial assistance under the Convention;
b) it interprets requests liberally without insisting on strict compliance with formalities;
c) it permits the taking of voluntary testimony before U.S. consular officers and diplomats;
d) it permits the production of documents to be used at trial;
e) it allows the examination of witnesses relating to documents, and
f) it has in connection with this brief expressed its intention to consider the practical experience gained so far and to be gained in the future, in connection with the promulgation of regulations for pre-trial production of documents.
Brief for the Federal Republic of Germany as Amicus Curiae at 13–14.

some countries would consider the taking of evidence within their borders a usurpation of judicial prerogative, an international agreement setting up a framework for seeking and granting permission has great value, allowing evidence to be taken without affront to local authorities. Second, an unwilling non-party witness simply cannot be reached, if outside the court's jurisdiction, unless authorities in the witness' state use their authority to compel the giving of evidence. An international agreement provides a framework for the invocation of a foreign authority's compulsory powers, making accessible evidence which otherwise would not have been accessible. [Footnotes omitted].

101 F.R.D. at 520. The court further discounted the analysis of the court in *Philadelphia Gear*, stating that:

*Philadelphia Gear* ... attaches very little significance to West Germany's declaration under Article 23. ... assum[ing] that West German authorities would consider their declaration to be tempered by an obligation to execute Letters of Request in good faith.... This court believes that it would foster antagonism, not mutual cooperation, to suggest to foreign officials that they are acting in bad faith if they do not modify their position as declared under Article 23.... *Philadelphia Gear* [also] expressly stated that the Convention procedures will be only a first resort, and that recourse subsequently might be had to standard discovery procedures.... While this suggestion tends to minimize the possible interference with the powers of American courts, it also might tend to offend foreign authorities, rather than encourage a spirit of cooperation.... In this court's view, the greatest insult to the civil law countries' sovereignty would be for American courts to invoke their judi-

cial aid merely as a first resort, subject to the eventual override of their rulings. 101 F.R.D. at 523 [Citations omitted]. The *Graco* court finally noted the practical difficulties involved in proceeding under the provisions of the Hague Evidence Convention, stating that:

Involving two judicial systems in a single lawsuit is as likely to disrupt international relations as it is to promote them, especially when the two systems are brought together for discovery purposes. Some of the bitterest disputes center around discovery problems, and the participation of two judges, from different countries, will not necessarily facilitate resolution of discovery disputes.

101 F.R.D. at 523.

Ultimately, disposition of the issue of initial deference to the procedures under the Hague Evidence Convention is a function of a court's perspective on the larger issue of international comity. Understandably, if the concept of international comity lies somewhere between "absolute obligation," on the one hand, and "mere courtesy and good will," on the other, as the United States Supreme Court suggested in *Hilton v. Guyot*, 159 U.S. at 163–64, 16 S.Ct. at 143, 40 L.Ed. at 108, different conclusions may be reached under substantially similar sets of circumstances. As the court stated in *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C.Cir.1984):

"Comity" summarizes in a brief word a complex and elusive concept—the degree of deference that a domestic forum must pay to the act of a foreign government not otherwise binding on the forum. Since comity varies according to the factual circumstances surrounding each claim for its recognition, the absolute boundaries of the duties it imposes are inherently uncertain. [Footnote omitted].[15]

---

**15.** Similarly, in *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971), the court stated that:

Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice,

convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons

The three areas of interest which form the parameters of the principle of international comity are the interest of the forum state, the interest of the foreign state, and the interest of international relations in general. It is the final interest, however, in international cooperation, that lies at the core of the principle of international comity. As the court noted in *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d at 937:

> [T]he central precept of comity teaches that, when possible, the decisions of foreign tribunals should be given effect in domestic courts, since recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations. The interests of both forums are advanced—the foreign court because its laws and policies have been vindicated; the domestic country because international cooperation and ties have been strengthened. The rule of law is also encouraged, which benefits all nations. [Footnote omitted].

It must be recognized, however, that in the final analysis, the authority of the forum court having personal jurisdiction over a foreign national must prevail in order to preserve the interests of the forum state and its citizens. As the court in *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d at 937–38, concluded:

> [T]here are limitations to the application of comity. When the foreign act is inherently inconsistent with the policies underlying comity, domestic recognition could tend either to legitimize the aberration or to encourage retaliation, undercutting the realization of the goals served by

comity. No nation is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum. Thus, from the earliest times, authorities have recognized that the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act. Case law on the subject is extensive and recognizes the current validity of this exception to comity. [Footnotes omitted].

■ We therefore conclude that although the procedures under the Multilateral Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 [reprinted in 28 U.S.C.A. § 1781 (Supp.1984)] are not the exclusive means by which evidence located abroad may be obtained by West Virginia litigants, the principle of international comity dictates first resort to those procedures until it appears that such attempt has proven fruitless and that further action is necessary to prevent an impasse. As previously mentioned, obtaining evidence abroad under the Hague Evidence Convention, particularly in the Federal Republic of Germany, is not without difficulty.[16] Eventually, the commendable adjustments to our rules of civil procedure contained in the discovery order in the instant proceeding may prove to be the most accommodating means by which the discovery sought may be obtained. Until an attempt is made, however, to follow the procedures set forth in the Hague Evidence Convention, it is difficult to ascertain the necessity of mandating additional procedures or imposing appropriate sanctions.[17] We do note that reasonable time

protected by its own laws. Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect. [Footnote omitted].

**16.** For excellent articles, however, on obtaining evidence in the Federal Republic of Germany, *see* Shemanski, *Obtaining Evidence in the Federal Republic of Germany: The Impact of The Hague Evidence Convention on German-American Judicial Cooperation, supra* note 10; Platto, *Taking Evidence Abroad for Use in Civil Cases in the United States—A Practical Guide, supra* note 4.

**17.** For example, although it is true that American litigants might be confronted initially with an official refusal to compel the production of documents, one commentator has noted that, "The threat of losing in a U.S. lawsuit has led German litigants simply to produce requested documents in the United States without the involvement of the German authorities." Shemanski, *Obtaining Evidence in the Federal Republic of Germany: The Impact of The Hague Evidence Convention on German-American Judicial Cooperation, supra* note 10, at 484.

limitations may be imposed to expedite proceedings under the Convention in order to ensure that it is not being interposed merely as a device for delay. But the principle of international comity dictates that the petitioners be given the opportunity to demonstrate that the discovery sought may be obtained utilizing uniform procedures designed to accommodate the conflicting approaches to obtaining evidence between the two countries involved under the Hague Evidence Convention.

Accordingly, we grant a writ of mandamus compelling vacation of the respondent judge's pretrial discovery order.

Writ granted.