**STATE OF WEST VIRGINIA**

*In re*: **N.H.**

**No. 17-0143** (Jackson County 16-JA-1)

**FILED**

**September 5, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.H., by counsel Teresa C. Monk, appeals the Circuit Court of Jackson County's September 20, 2016, order terminating his parental rights to N.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Steven R. Compton, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Erica Brannon Gunn, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2016, the DHHR filed an abuse and neglect petition against petitioner and N.H.'s mother alleging that they engaged in domestic violence in the child's presence and that petitioner exposed the child to drug use. The petition also alleged that the mother abandoned the child, frequently leaving him without basic provisions, including proper medical care, supervision, and shelter.[2] The petition further alleged that the mother failed to bond with the child; to comply with West Virginia Birth to Three services ("Birth to Three")[3]; and admitted to spanking, shoving, and yanking the child in his crib; and locking the child in his bedroom when

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]According to the record, N.H. was born with a heart murmur, blood on the brain, and cerebral palsy. As a result, the child is severely physically and developmentally delayed.

[3]West Virginia Birth to Three is an early intervention program that partners with families and caregivers to build upon their strengths by offering coordination, supports, and resources to enhance children's learning and development.

he cried. The petition finally alleged that petitioner failed to protect the child from the mother's neglect, cared for the child while he was under the influence of drugs and/or controlled substances, admitted to marijuana use, and admitted that he knew that the mother was leaving the child home alone. Also in January of 2016, the circuit court held a preliminary hearing, during which it found that the child was in imminent danger due to the presence of domestic violence. The circuit court removed the child from the home and ordered that petitioner and the mother submit to random drug screens and parental fitness evaluations.

In February of 2016, the circuit court held an adjudicatory hearing during which the mother admitted to engaging in domestic violence in the child's presence, leaving him alone, and failing to provide him with appropriate medical care and supervision. Based upon the mother's admission, she was adjudicated an abusing parent and granted an improvement period. Petitioner failed to appear at this first adjudicatory hearing, but was represented by counsel. The circuit court continued the hearing. In March of 2016, the circuit court held a second adjudicatory hearing wherein it heard testimony from (1) a service coordinator with West Virginia Birth to Three; (2) an outreach coordinator with Homebase; and (3) petitioner.[4] The service coordinator testified that, at a meeting with petitioner, petitioner threw the child down on a couch and "ran outside" after receiving a text message on his cellular telephone. She also testified that petitioner's pupils were dilated and he appeared "jittery." She further testified that petitioner stated he left the meeting to "do a job" but failed to explain to her what the job was when she questioned him. The outreach coordinator testified that, at a meeting with petitioner, his pupils were dilated. The mother testified that petitioner was "involved with drugs." She also testified that she filed for a domestic violence protective order in April of 2016 after petitioner put a gun to her head and threatened her life and the child's life. Based on the evidence presented, the circuit court found that petitioner and the mother exposed the child to domestic violence. The circuit court also found that petitioner failed to seek proper care for the child, failed to keep Birth to Three appointments for the child, and cared for the child while under the influence of drugs.

In May of 2016, the circuit court held a dispositional hearing wherein the circuit court heard testimony that petitioner failed to submit to a parental fitness examination. The dispositional hearing was then continued to June of 2016. Petitioner failed to appear but was represented by counsel. Thereafter, petitioner filed a motion for an improvement period, while the DHHR filed a motion to terminate petitioner's parental rights. The dispositional hearing was continued until July of 2016. Again, petitioner failed to appear but was represented by counsel. The DHHR presented evidence in support of its motion to terminate petitioner's parental rights, including evidence that petitioner failed to attend Birth to Three meetings. The circuit court found that petitioner had failed to cooperate with the DHHR to develop a family case plan and that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. The circuit court also found that petitioner was not likely to successfully participate in a post-adjudicatory improvement period and denied his

---

[4]Homebase is a private behavioral health and social service provider serving the entire State of West Virginia.

motion. Ultimately, the circuit court terminated petitioner's parental rights by order dated September 20, 2016.[5] It is from this order that petitioner now appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

In petitioner's first assignment of error, he argues that the evidence at adjudication was insufficient to adjudicate him as an abusing parent. According to petitioner, no evidence below established that he ever abused drugs around the child, that he committed an act of domestic violence in the child's presence, or that his parenting skills were impaired to any degree. According to petitioner, the mother "could not remember but one domestic [violence] act that would have happened in front of the [c]hild." He contends that this Court, in *In re Lilith H.*, found that one incident of domestic violence in the presence of a child is not per se abuse. 231 W.Va. 170, 181, 744 S.E.2d 280, 291 (2013). He further contends that he did not have "much access to the child" because a domestic violence protective order was in effect during the underlying proceedings and he was not the child's primary caretaker.[6] As such, he argues that the circuit court's finding that he is an abusing parent was erroneous.

---

[5]Petitioner and the mother's parental rights to the child were terminated below. According to the guardian, the child is currently placed in a foster home with the permanency plan of adoption into that home.

[6]Petitioner also argues that there "was no evidence on the record that [petitioner] is the biological [parent] of N.H." However, there is no indication in the record that petitioner ever denied being N.H.'s father during the underlying proceedings. Because petitioner fails to develop this argument, we will not address it on appeal. See *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing [which] are not supported with pertinent authority, are not considered on appeal.")

In regard to the DHHR's burden of proof at adjudication, we have held as follows:

> "W.Va.Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Here, the evidence is clear that there was an extensive record of domestic violence between petitioner and the mother, that petitioner failed to provide the child with proper supervision, shelter, and, at a minimum, neglected the child.

Petitioner makes much of our holding in *In re Lilith H.*, however, the domestic violence dispute that took place in that case between a father and a grandfather was the only allegation of domestic violence on the record. To the contrary, in this case, the mother testified to many instances of domestic violence between the parties and that at least one of those instances occurred in front of the child. The mother also testified that she requested multiple domestic violence protective orders against petitioner and at least one such domestic violence protective order was granted against him. Petitioner fails to acknowledge that the evidence regarding the domestic violence protective order was uncontroverted. As such, the DHHR clearly established that domestic violence occurred in the home.

Moreover, while petitioner argues that the domestic violence protective order and the mother's status as the child's primary caregiver prevented him from neglecting the child, the circuit court found that petitioner knew that the child had been left with others for long periods of time and did nothing to ensure that the child was properly cared for. We agree. Petitioner was not absolved of his duty to ensure that the child received the necessary care and supervision simply because he was ordered to have no contact with the mother and child due to domestic violence. On the contrary, the record shows that petitioner's willful refusal to meet the child's needs resulted in his neglect. Accordingly, we find that the DHHR met its burden at adjudication and the circuit court did not err in ruling that petitioner was an abusing parent.

Next, petitioner argues that the circuit court erred in terminating his parental rights to the child. Petitioner claims that his parental rights were improperly terminated because he was not given proper notice of the dispositional hearing and was not granted an improvement period. First, we find no merit to petitioner's argument regarding his alleged lack of notice for the dispositional hearing. The record is clear that petitioner failed to communicate with his attorney, attend hearings, or otherwise participate in this matter. According to the record, petitioner's counsel informed him of the hearing date and contacted him via letter to ensure that petitioner was aware of the proceedings. Moreover, the record is clear that petitioner was represented by counsel throughout the proceedings below and that counsel received proper notice of all hearings. As such, the Court finds no error with regard to this assignment of error.

Petitioner next argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. We have long explained that circuit courts have discretion in deciding whether to grant or deny a respondent parent's motion for a post-adjudicatory improvement period. West Virginia Code § 49-4-610(2) provides that circuit courts may grant an improvement period if "[t]he respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period[.]" As used in West Virginia Code § 49-4-610, the word "may" is a permissive term connoting discretion. *Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher*, 174 W.Va. 618, 626 n.12, 328 S.E.2d 492, 500 n.12 (1985) (stating that "[a]n elementary principle of statutory construction is that the word 'may' is inherently permissive in nature and connotes discretion." (citations omitted)). We have also held that "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened . . . ." Syl. Pt. 1, in part, *In Re: R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Petitioner argues that the circuit court erred in denying his motion for an improvement period because "the record is not clear about the feasibility of an improvement period" and given that the mother was granted an improvement period. Based upon our review of the record on appeal, we find no error. Here, the circuit court acted within its discretion in denying petitioner a post-adjudicatory improvement period because he failed to attend hearings, multidisciplinary team meetings and Birth to Three appointments, and to cooperate with the DHHR to develop a reasonable family case plan. The circuit was also presented with evidence that petitioner failed to complete a parental fitness evaluation and to submit to random drug screens. Based on the foregoing, we find that the circuit court heard sufficient evidence to deny petitioner's motion for a post-adjudicatory improvement period. Thus, we find no error.

Finally, petitioner argues that the circuit court erred in terminating his parental rights to the child because the "record is so poorly developed" it did not support termination. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights when they find that there was no reasonable likelihood that a parent could substantially correct the conditions of abuse and neglect in the near future and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing . . . parents . . . have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" In the case at bar, and as noted above, petitioner failed to attend hearings, multidisciplinary team meetings, Birth to Three appointments, cooperate with the DHHR, complete a parental fitness evaluation, or submit to random drug screens. As a result, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future; thus, termination was necessary for the child's welfare. Given the circumstances presented in this case, we find no error in the circuit court's order terminating petitioner's parental rights to the child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 20, 2016, order is hereby affirmed.

5

Affirmed.

**ISSUED**:  September 5, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker