[Civ. No. 20476. Third Dist. Sept. 21, 1981.]

DR. ING H.C. F. PORSCHE A.G., Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
KIMBERLY JEAN SCHILLING, a Minor, etc., et al., Real Parties in
Interest.

**COUNSEL**

Donovan, Leisure, Newton & Irvine, Peter J. Courture and Stephen T. Waimey for Petitioner.

No appearance for Respondent.

Long & Levit, David W. Evans, Joseph P. McMonigle, Hinton & Van Blois, R. Lewis Van Blois and Thomas C. Knowles for Real Parties in Interest.

**OPINION**

CARR, J.—The sole issue in this appeal is whether the trial court acquired personal jurisdiction over petitioner (Porsche), who seeks mandate to compel the trial court to vacate its order denying petitioner's motions to quash service of summons and to dismiss pursuant to section 581a, Code of Civil Procedure.

This action for wrongful death arises from a single car accident on May 16, 1977. Plaintiffs' decedent, a passenger in a 1977 Porsche automobile owned and driven by another person who, like petitioner, is a defendant herein, was killed when the Porsche left the roadway of Brannan Island Road in Sacramento County and crashed.

Two of the several named defendants were Volkswagenwerk A.G., a German Corporation, and Volkswagen of America, Inc. (VWOA).

The critical issue is the effect, if any, of the failure of plaintiffs (real parties in interest) to perfect service of process in accordance with the

Hague Convention,[1] an international treaty governing service of judicial and extrajudicial documents in civil or commercial matters, upon citizens of signatory countries.

From the record[2] it appears plaintiffs' (real parties') attorney, in August 1980, discovered the vehicle in question had not been manufactured by defendant Volkswagenwerk as originally believed but by a separate German corporation, Porsche. Real parties' counsel then engaged in a series of procedures to effectuate service of summons on petitioner Porsche.

On August 20 and 26, 1980, he sent a copy of the summons and complaint (in English) together with two copies of the notice/acknowledgment of receipt by registered mail to Volkswagenwerk, and to Porsche respectively at their addresses in Germany. Volkswagenwerk returned its receipt, which was filed with the court on September 5, 1980, but no receipt was returned from Porsche. In discussions with Volkswagenwerk's New York counsel on August 26, 1980, real parties' counsel was advised the law firm of Donovan, Leisure, Newton and Irvine located in New York City was chief counsel for Porsche. On August 27, 1980, counsel talked by telephone with an attorney in the Donovan office and was informed that, although the Donovan firm did represent Porsche, the attempted service of Porsche by registered mail was defective; that service must be made pursuant to the Hague Convention. No procedural details of how to accomplish this service were volunteered by the Donovan attorney.

---

[1] A convention enjoys the status of a treaty. (See *American Trust Company v. Smyth* (9th Cir. 1957) 247 F.2d 149; *Garcia* v. *Pan American Airways* (1946) 295 N.Y. 981 [57 N.E.2d 257]; cert. den. 329 U.S. 741 [91 L.Ed. 640, 67 S.Ct. 79].)

[2] We note that initially real parties filed only a memorandum of points and authorities in opposition to the petition. Subsequently, real parties filed with us a letter, dated April 9, 1981, requesting that we adopt that memorandum "in lieu of a formal return to the writ." However, a memorandum of points and authorities fails to satisfy the requirements of a return (Cal. Rules of Court, rule 56(c)) and is not responsive to the allegations. (*Pacific Indem. Co. v. Superior Court* (1966) 246 Cal.App.2d 63, 65 [54 Cal.Rptr. 470].) On April 23, 1981, petitioner filed a response to real parties' letter, pointing out real parties' error. On April 28, 1981, real parties submitted a verified "amended" return denying the allegations contained in the petition. Rule 56(c) permits a return to be made at least five days before the date set for hearing, unless this court specifies a different date. In this case we informed the parties upon issuance of the alternative writ that the return was to be served and filed on or before April 9, 1981. No relief from default was sought and the untimely filing of the return leaves the allegations of the petition undenied.

On August 28, 1980, counsel contacted the German consulate in San Francisco and was told that service on VWOA probably included Porsche. He received no information on the procedure for serving Porsche directly.

On August 28, 1980, such counsel requested Air Borne Freight Corp. to deliver copies of the summons and complaint to Volkswagenwerk in Wulfsberg, Germany, to Porsche in Stuttgart, Germany, and to the American consulate's office in Stuttgart with the request that the consulate foreward the summons and complaint to both defendants.

On September 2, 1980, the consulate returned the summons and complaint to real parties' counsel with a letter from the vice consul advising the correct method of service was pursuant to the requirements of the Hague Convention. The name and address of the proper central authority designated for service in the Stuttgart area was also provided.

On September 2, 1980, real parties' counsel received a call from Steve Waimey, of the Los Angeles office of Donovan, Leisure, Newton and Irvine advising that the Donovan firm was not authorized to accept service on behalf of Porsche, and of the applicability of the Hague Convention.

On September 3, 1980, counsel secured from the trial court an order for service of summons on a foreign corporation by delivery to the Secretary of State.

Meanwhile, back at his law office, real parties' counsel determined the Donovan office was Porsche's designated agent for service of process in the United States under the National Traffic and Motor Vehicle Safety Act of 1966 (15 U.S.C. § 1399 (e)). Real parties admit no one in the Donovan office was served as an agent under that act. However, in the trial court and in this appeal, real parties contend their counsel was purposely misled by attorneys at the Donovan office and that counsel would have served the designated agent had he been informed of their agency status.

Inferentially, the trial court so found, as the minute order of the proceedings on the motion to quash cites *Bollard* v. *Volkswagenwerke, A.G.* (W.D.Mo. 1970) 313 F.Supp. 126 as authoritative. *Bollard* holds that common law tort actions may be served on the agent designated for service of process pursuant to the National Traffic and Motor Vehi-

cle Safety Act. No other basis for denial of Porsche's motion to quash is disclosed by a search of the record.

Real parties concede they have not complied with the requirements of the Hague Convention. For reasons herein stated, we find the Hague Convention controlling.

## I

The United States became bound by the provisions of the multilateral international convention governing "Service Abroad of Judicial and Extrajudicial Documents" (the Hague Convention) on February 10, 1969 (20 U.S.T. 361-367, T.I.A.S. 6638). Germany ratified the treaty on June 21, 1979.

The second clause of article VI of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Accordingly, a California court may not exercise jurisdiction in violation of an international treaty. (See *United States* v. *Pink* (1942) 315 U.S. 203, 230, 234 [86 L.Ed. 796, 817-818, 820, 62 S.C. 552]; *Hauenstein* v. *Lynham* (1879) 100 U.S. 483, 488-490 [25 L.Ed. 628, 630-631]; and *Baldwin-Lima-Hamilton Corp.* v. *Superior Court* (1962) 208 Cal.App.2d 803, 819-820 [25 Cal.Rptr. 798].)

Service of process pursuant to the pertinent provisions of the Hague Convention was at issue in *Shoei Kako Co.* v. *Superior Court* (1973) 33 Cal.App.3d 808 [109 Cal.Rptr. 402]. As that court observed: "Article 1 of the treaty provides: 'The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.' Articles 2 through 6 establish a system whereby each contracting state shall organize and designate a 'Central Authority' which will undertake to receive, and to reject or to execute, and to certify requests for service of process from other contracting states. Other methods of service are recognized. Article 8 permits service to be effected upon persons abroad through diplomatic or consular agents unless opposition has been declared by the state involved to such service on others than nationals of

the originating state. Article 9 permits service by forwarding documents for service through consular or diplomatic channels to authorities who are authorized to effect service. The controversy in this case revolves about the provisions of article 10, which reads: 'Provided the State of destination does not object, the present Convention shall not interfere with—(a) the freedom to send judicial documents, by postal channels, directly to persons abroad, (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials, or other competent persons of the State of destination, (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.'" (Pp. 819-820.)

In *Shoei Kako, supra,* the Japanese government, as it was permitted under the convention, refused the employment of the methods of service and notice of article 10(b) and (c). However, article 10(a), in the absence of objection, provides the convention "shall not interfere with— (a) the freedom to send judicial documents, by postal channels, directly to persons abroad." (20 U.S.T. 361-367.) Service of process by registered mail on a Japanese corporation, found to have sufficient contacts within California to uphold in personam jurisdiction, was held sufficient compliance with the treaty in question.

However, in ratifying the Hague Convention Germany opted, pursuant to article 21, to oppose the use of methods of transmission otherwise permitted by articles 8 and 10.[3] (See 7 Martindale-Hubbell Law Directory (1980) p. 4502.) These alternative methods of service rejected by Germany were service by mail and through diplomatic or consular channels, both of which were attempted by real parties herein.

We note that real parties were advised on several occasions that the effectual method of service was by the terms of the Hague Convention as accepted by Germany but no effort was made to effectuate such service.

---

[3]Germany declared: "In accordance with paragraph 2(a) of Article 21 of the Convention, the Government of the Federal Republic of Germany objects to the use of methods of transmission pursuant to Articles 8 and 10. Service through diplomatic or consular agents (Article 8 of the Convention) is therefore only permissible if the document is to be served upon a national of the State sending the document. Service pursuant to Article 10 of the Convention shall not be effected."

Real parties concede they have failed to comply with the convention which requires service of process upon the designated "Central Authority." We conclude that even a showing that Porsche had actual notice is insufficient to avoid the effect of noncompliance with the convention.

Notwithstanding plaintiff's failure to serve Porsche's designated agent for service of process under the National Traffic and Motor Vehicle Safety Act we likewise conclude the scope of such agency is limited to actions which pertain to that act and not to common law actions commenced in California courts. Accordingly, we reject the contrary analysis of *Bollard* v. *Volkswagenwerke, A.G., supra*, 313 F.Supp. 126. (See *Fields* v. *Peyer* (1977) 250 N.W.2d 311, 318 [75 Wis.2d 644]; *Volkswagenwerk, etc.* v. *McCurdy* (Fla.App. 1976) 340 So.2d 544.)

## II

Petitioner's motion to dismiss pursuant to Code of Civil Procedure, section 581a, was denied following denial of the motion to quash service of summons. Because we shall issue a writ to compel the trial court to vacate its order denying the motion to quash and to enter an order granting said motion, a writ must also issue to compel the trial court to hold a hearing on the issue of reasonable diligence with respect to its decision not to dismiss pursuant to section 581a (Code Civ. Proc.) in light of the considerations articulated in the recent case of *Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714 [170 Cal.Rptr. 790, 621 P.2d 829].

Let a peremptory writ of mandate issue to compel: (1) the trial court to vacate its order denying petitioner's motion to quash service of summons and to enter an order granting said motion; and (2) to compel the trial court to hold a hearing in accord with the views expressed in *Hocharian* v. *Superior Court, supra*, 28 Cal.3d 714.

Regan, Acting P. J., and Phillips, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.