AMYN S. DAHYA, Petitioner, *v.* THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for THE COUNTY OF WASHOE, and THE HONORABLE CONNIE J. STEINHEIMER, District Judge, Respondents, and CASMYN CORPORATION, a Colorado Corporation, Real Party in Interest.

No. 36224

March 14, 2001                                                    19 P.3d 239

*Woodburn & Wedge* and *Stephen S. Kent,* Reno, for Petitioner.

*Jones Vargas* and *Gregory A. Brower,* Reno, for Real Party in Interest.

# OPINION

By the Court, LEAVITT, J.:

In the case underlying this petition, petitioner Amyn Dahya was served process by a Spanish attorney at his home in Tenerife, Spain, pursuant to a legal action that was commenced in Nevada. Dahya subsequently appeared in the Second Judicial District Court seeking to quash service of process. His motion was denied. As a result, Dahya now petitions this court for a writ of prohibition. The issues presented before us are twofold: Did the service on Dahya conform with the Hague Convention as that document relates to service abroad; and if not, did that service comply with Spanish civil procedure? We conclude that the service failed to comply in either respect, and as a result, we grant the petition.

## FACTS

Petitioner Dahya is a naturalized Canadian citizen now residing in Spain. Dahya resided in Reno, Nevada, from 1991-96, and continues to own property in the state. Until 1998, Dahya was the president and CEO of Casmyn Corporation ("Casmyn"), a now bankrupt Colorado corporation that maintained an office in Sparks, Nevada, from 1993-96.

In January 2000, Casmyn filed a complaint against Dahya in Nevada's Second Judicial District Court, alleging, among other things, breach of fiduciary duty and fraudulent use of the corporation's expense accounts during his time as president of the company. Subsequently, Spanish attorney Jose Luis de San Pio personally served Dahya with process at Dahya's residence in Tenerife, Spain.

However, no Spanish court authorized San Pio to serve Dahya at the residence. As a result, Dahya filed a motion in the Nevada court alleging that the service did not comply with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters[1] (hereinafter "Hague Convention"), and that the service failed to satisfy Spanish procedural laws. The district court denied this motion.

Dahya now seeks extraordinary relief and asks us to prohibit the district court from exercising jurisdiction in this matter.

---

[1]See 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163, reprinted in 28 U.S.C., Fed. R. Civ. P. 4.

## DISCUSSION

This court may issue a writ of prohibition to arrest the proceedings of a district court exercising its judicial functions, when such proceedings are in excess of the jurisdiction of the district court.[2] A petition for a writ of prohibition is addressed to the sound discretion of this court.[3] Further, a writ of prohibition is the appropriate vehicle to challenge a district court's refusal to quash service of process.[4]

Here, Dahya contends that the district court misapplied both the Hague Convention and Spanish civil procedure, and that the court therefore erred in denying his motion to quash service of process. We agree.

Stated simply, the Hague Convention is designed to provide "a mechanism by which a plaintiff authorized to serve process under the laws of its country can effect service that will give appropriate notice to the party being served and will not be objectionable to the country in which the party is served."[5] The Hague Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."[6] Because both Spain and the United States are signatory states to the Hague Convention, the service on Dahya must have been "effected strictly according to the procedures set forth" under the Hague Convention's guidelines.[7] Thus, any failure to comply with the Hague Convention's service methods would have the effect of nullifying the attempted service.[8]

---

[2]NRS 34.320.

[3]*Smith v. District Court,* 107 Nev. 674, 677, 818 P.2d 849, 851 (1991).

[4]*Trump v. District Court,* 109 Nev. 687, 692, 857 P.2d 740, 743 (1993) (citations omitted).

[5]*DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 288 (3d Cir. 1981).

[6]Hague Convention Art. 1.

[7]*Teknekron Management, Inc. v. Quante Fernmeldetechnik GmbH,* 115 F.R.D. 175, 176 (D. Nev. 1987) (citing *Vorhees v. Fischer & Krecke,* 697 F.2d 574, 575 (4th Cir. 1983)).

[8]*See Griggs Group Limited v. Filanto Spa,* 920 F. Supp. 1100, 1102 (D. Nev. 1996) (citations omitted). The service provisions of the Hague Convention take precedence over any conflicting Nevada procedural rules. The second clause of Article VI of the United States Constitution establishes that treaties are the supreme law of the land, and are binding upon the several states. The Hague Convention is recognized with status equivalent to a treaty. *See Ex parte Volkswagenwerk Aktiengesellschaft,* 443 So. 2d 880, 882 (Ala. 1983); *Dr. Ing H. F. Porsche A.G. v. Superior Court,* 177 Cal. Rptr. 155 (Ct. App. 1981). Thus, when state service of process procedures have

Three liberal methods of service are permitted under the Hague Convention. First, service may go through the central authority of the receiving country.[9] Second, service may go through diplomatic or consular agents that the receiving country considers "non-objectionable."[10] And third, service may be done by any method permitted by the internal law of the receiving country.[11]

In the instant case, Casmyn bypassed service through both the Spanish Central Authority and diplomatic channels. However, the district court determined that Casmyn's personal service on Dahya by a Spanish attorney was proper because it complied with Convention Article 19. Article 19 provides that "[t]o the extent that the internal law of a contracting state *permits* methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions." (Emphasis added.)

The term "permits" has been subject to varying interpretations. One view suggests that the term should be broadly construed to allow for any form of service not specifically prohibited or objected to by the foreign country.[12] Conversely, a second interpretation suggests that the term should be narrowly construed to only allow for those alternative service methods specifically authorized by foreign law.[13]

In following the former interpretation, the district court held that the Hague Convention permitted the type of service effected by Casmyn because the means used were "reasonably calculated to give notice" pursuant to the Nevada long-arm statute,[14] and because Spain failed to raise any objection to the service method.

---

been found to be in direct conflict with the Hague Convention, courts have been compelled to recognize the supremacy of the Convention's provisions. *See generally Ackermann v. Levine,* 788 F.2d 830, 840-41 (2d Cir. 1986).

[9]*See* Hague Convention Art. 5. In Spain, the designated central authority is the Ministry of Justice in Madrid. *See* Hague Convention at Annex n.19.

[10]*See* Hague Convention Art. 8-11.

[11]*See* Hague Convention Art. 19.

[12]*See Banco Latino, S.A.C.A. v. Gomez Lopez,* 53 F. Supp. 2d 1273 (S.D. Fla. 1999); *see also DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 288 (D.N.J. 1981) (Rule 4's service methods "may be used as long as the nation receiving service has not objected to them."); *Lemme v. Wine of Japan Import, Inc.,* 631 F. Supp. 456, 464 (E.D.N.Y. 1986).

[13]*See* Brian Raley, *A Comparative Analysis: Notice Requirements in Germany, Japan, Spain, The United Kingdom and The United States,* 10 Ariz. J. Int'l & Comp. L. 301, 307 (1993); Gary A. Magnarini, *Service of Process Abroad Under the Hague Convention,* 71 Marq. L. Rev. 649, 681-82 (1988).

[14]NRS 14.065.

This determination was in error.

Our inquiry into the language of Article 19 is twofold in nature: Does the Hague Convention "permit" alternative methods of service beyond those prescribed by the Hague Convention articles; and if not, did the particular service method used in this instance comport with Spanish internal law?[15]

As to the first inquiry, although this court is mindful of recent federal authority cited by the district court in support of its determination,[16] we nonetheless conclude that the term "permits" under Article 19 should not be so broadly defined.

Specifically, the Hague Convention was adopted with clear and delineated guidelines for the sole purpose of creating uniformity when effecting service abroad.[17] Thus, rather than relying on the procedural service of process mechanisms espoused by fifty separate states in this country, and countless nations abroad, the Hague Convention sought to avoid the hidden pitfalls that inevitably closed courtroom doors to unwary foreign litigants by adopting a uniform set of service rules.[18] With this background in mind, we conclude that an interpretation of "permits" which would allow for service by any means not particularly objected to by the foreign state would be discordant with the drafters' intent.

Foremost, a broad interpretation would not promote uniformity or alleviate confusion as the drafters intended. Rather, it would force signatory states to once again embrace a multifarious set of service methods that contradict both the state's internal laws and the Convention. Further, we conclude that a broad interpretation would unduly impinge upon foreign state sovereignty. The absolutionist formulation of the nation as a clearly defined territorial sovereign has long since been recognized in this country.[19] Thus, a foreign state should be afforded the autonomy to select service methods commensurate with its own internal laws and the Hague Convention without having to object to all other methods not specifically proscribed.

In addition, we note that language in other articles of the Hague Convention suggest that the term "permits" was never intended to allow all forms of service not objected to. For example, Article 11 states that the Hague Convention does not prohibit two contracting states from "*agreeing to permit,* for the purpose of ser-

---

[15]*See Banco Latino,* 53 F. Supp. 2d at 1279.

[16]*See id.*

[17]*See* Hague Convention at Preamble.

[18]*See* S. Rep. No. 2392, 85th Cong., 2d Sess. (1958).

[19]*See The Schooner Exchange v. McFaddon,* 11 U.S. (7 Cranch) 116 (1812).

vice of judicial documents, channels of transmission other than those provided for in the preceding articles." (Emphasis added.) Yet it is readily apparent that the "agreement" would be unnecessary if a contracting nation were already required to authorize all service methods not specifically proscribed.

Likewise, the terms "object" or "oppose" are used in precise places in the Hague Convention to denote when a contracting state has the ability to limit the scope of the Hague Convention by refusing to accept service in the given manner.[20] In these specific articles, a contracting state must object or service may transpire accordingly. However, no similar language requiring formal objection is found in Article 19. Therefore, the requirement of a formal objection does not appear to be present under Article 19. As a result, we conclude that the district court erred in holding that a specific objection—mandatory under other Hague Convention articles—should likewise be required under Article 19.

Having concluded that Article 19 prohibits service in any manner not specifically allowed by the receiving foreign state, we must determine whether service was effected in accordance with the receiving nation's internal law. In this regard, both parties submitted affidavits from Spanish counsel setting forth the relevant provisions under that country's law for determining whether Spanish courts permit service in the matter effected by Casmyn.[21] Although neither side disputes that personal service is allowed in Spain,[22] the affidavits conflict as to whether foreign service can be performed by a private individual on a resident who is not a Spanish national.

---

[20]As an example, Articles 8 and 10 discuss the ability to forward judicial materials through diplomatic channels, and through postal channels. Article 8 specifically states that "[a]ny State may declare that it is *opposed* to such service." (Emphasis added.) Likewise, Article 10 states that documents may be sent through the mail "[p]rovided the State of destination does not *object*." (Emphasis added.) Further, Article 21 notes that "[e]ach contracting State shall similarly inform the Ministry, where appropriate, of—(a) *opposition* to the use of methods of transmission pursuant to articles 8 and 10." (Emphasis added.)

[21]Once an issue of foreign law has been properly raised, this court may make a determination of that law, and subsequently "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under Rule 43." NRCP 44.1. Further, this court's determination is treated as ruling on a question of law. *See id.* Thus, foreign law should be argued and briefed in the same manner as domestic law, and as with domestic law, judges should use both their own research and the evidence submitted by the parties to determine foreign law. *See Ackermann,* 788 F.2d at 838.

[22]Clearly, under Spain's internal law service is permitted in four ways: By means of personal service; by certificate; by publication; and by certified mail with return receipt. *See* Spanish Civil Procedure Act of 1881.

The affidavit from Jose Luis de San Pio, Casmyn's process server, states that "Spanish law does not prohibit personal service of a foreign summons and complaint by a private individual such as myself." San Pio's affidavit, however, cites no Spanish law permitting foreign service by a private individual on a non-Spanish defendant. Rather, he states that because Spanish law is silent on the matter, this method of service is therefore proper.[23]

In opposition, the affidavit of Maria Victoria Gonzalez Echeverria, a Spanish attorney retained to support Dahya's motion to quash, states that service is a judicial act under Spanish law that must be performed by judicial authority regardless of the circumstances. Specifically, Echeverria notes that the Ley de Enjuiciamiento Civil (Spanish civil procedure, hereafter "LEJ") requires that notification be performed under strict guidelines in order to establish "fundamental rights of actual legal guarantee of notification, establish effective protection of the Court, due process, etc."[24] Thus, "judicial authorities are the only ones that can notify the parties."[25] Because San Pio had no such authority, Echeverria contends that Spanish courts will not recognize San Pio's personal service of petitioner Dahya. We agree.

We conclude that regardless of Dahya's status as a non-citizen defendant, the laws of Spain should control personal service on him as if he were a Spanish national.[26] Under Spanish law, personal service must be specifically performed by an authorized marshall or judicial officer.[27] Any method of service not in accord with Spanish civil procedure—including unauthorized service—is deemed void.[28] Therefore, although San Pio, an attorney, performed service in this instance, San Pio is not a marshall or judicial officer authorized to perform such a function. As a result, the service on Dahya was not in accordance with Spain's procedural requirements and was ineffective.

## CONCLUSION

As service on Dahya did not comport with the Hague Convention or Spanish law, the district court never acquired juris-

---

[23]Likewise, the *Banco Latino* court stated that because Spanish law did not expressly proscribe notice through personal service by a private individual involving foreign litigation, such service must be permitted. *See* 53 F. Supp. 2d at 1280.

[24]LEJ 261.

[25]*Id.*

[26]*See Grand Entertainment Group v. Star Media Sales,* 988 F.2d 476, 490 (3d Cir. 1993).

[27]LEJ 266.

[28]LEJ 279.

diction over Dahya. Accordingly, we grant the petition and direct the clerk of this court to issue a writ of prohibition restraining the district court from exercising jurisdiction over Dahya based on the defective service.

YOUNG, SHEARING, AGOSTI and BECKER, JJ., concur.

ROSE, J., with whom MAUPIN, C. J., agrees, dissenting:

I dissent because I believe the district court correctly ruled that service of process was properly effected upon Mr. Dahya in Tenerife, Spain, and it was not in violation of the service abroad provisions of the Hague Convention. In the case of *Banco Latino, S.A.C.A. v. Gomez Lopez,* 53 F. Supp. 2d 1273 (S.D. Fla. 1999), the defendant was served outside the United States in a manner similar to service in this case. In refusing to quash service, the federal district court concluded that various service methods can be used in foreign countries without violating the Hague Convention as long as the nation receiving service has not objected to them. *See id.* at 1280.

This standard seems reasonable. The object of service of process is to give notice of a pending legal action. It is often difficult to do this in a neighboring state, let alone a foreign nation where the law may be unwritten, unclear, or subject to arbitrary interpretation. Construing the Hague Convention's service of process provisions liberally permits service of process in a foreign nation in a manner that is not prohibited, and actually notifies the person served. This is the approach taken by the *Banco Latino* case and I believe it is the better precedent to follow. Accordingly, I believe Dahya was properly served, and I would deny the petition.