DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**PAOLA A. ALVARADO-FERNANDEZ,**
Appellant,

v.

**MATTHEW MAZOFF,**
Appellee.

No. 4D14-503

[October 8, 2014]

Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carol-Lisa Phillips, Judge; L.T. Case No. 09043628(25).

Doreen E. Lasch and Daniel J. Santaniello of Luks, Santaniello, Petrillo & Jones, P.A., Fort Lauderdale, for appellant.

Julie H. Littky-Rubin of Clark, Fountain, La Vista, Prather, Keen & Littky-Rubin, LLP, West Palm Beach, and Andrew J. Weinstein of Weinstein Law Firm, Coral Springs, for appellee.

KLINGENSMITH, J.

Appellee Matthew Mazoff ("Plaintiff") filed suit against appellant Paola Alvarado-Fernandez ("Defendant"), a Colombian citizen, for personal injuries sustained when Plaintiff's car was struck by a vehicle driven by Defendant and rented from Alamo.[1]  Defendant moved to dismiss the case, alleging that (1) Plaintiff failed to strictly comply with two treaties in effect between Colombia and the United States when attempting to serve process on Defendant; (2) in the alternative, Plaintiff failed to comply with the substituted service statutes; (3) Plaintiff late-filed his affidavit of compliance; and (4) Florida Rule of Civil Procedure 1.070(j) bars the

---

[1] Appellee initially filed suit against Alvarado as well as Alamo Financing, LP, and Alamo Rental U.S., Inc. ("Alamo").  Alamo ultimately obtained a final summary judgment in this case, which was later affirmed on appeal.  *Mazoff v. Alamo Fin., LP*, 98 So. 3d 581 (Fla. 4th DCA 2012).

continuance of this case.  For the reasons set forth herein, we affirm the trial court's denial of Defendant's motion to dismiss.

*Facts*

Plaintiff initially filed an affidavit of compliance shortly after commencing suit in which he stated that the Secretary of State accepted service of process on behalf of Defendant, and that he attempted to serve a copy of the summons and complaint upon Defendant via "USPS First Class Mail International" to her last known address.  That mailing never reached Defendant.  After this original attempt at service, Plaintiff amended his complaint and tried again to serve Defendant, but was also unsuccessful.  After filing a second amended complaint, another unsuccessful attempt at service was made.  Plaintiff filed his latest pleading, a Third Amended Complaint, in July 2012.  Since that time, Plaintiff secured eight extensions of time from the court to attempt successful service of process.

Plaintiff ultimately effected substitute service of the Third Amended Complaint on Defendant by serving the Secretary of State in accordance with the provisions of section 48.161, Florida Statutes (2013).  Plaintiff also mailed a copy of the summons and complaint to Defendant via registered mail to her last known address, which went unclaimed.

Defendant moved for dismissal of the case[2] pursuant to Florida Rule of Civil Procedure 1.070(j), alleging insufficient service of process and lack of personal jurisdiction on various grounds.[3]  In the motion, Defendant asserted that Plaintiff failed to comply with two treaties to which both the United States and Colombia are signatories, the Inter-American Service Convention on Letters Rogatory and Additional Protocol (the "IASC")[4] and the Hague Service Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague

---

[2] Since Defendant was not located, Alamo's counsel filed these motions on her behalf in this proceeding.

[3] On the day of the hearing on Defendant's motion, Plaintiff filed an affidavit stating he had obtained substitute service on Defendant pursuant section 48.161, and asked the court to accept this late-filed affidavit for consideration at the hearing, or in the alternative, for another extension of time.

[4] S. TREATY DOC. No. 27, 98th Cong., 2d Sess. (1984).

Convention")[5] both of which mandate strict procedures for obtaining service of process over individuals in Colombia.

After allowing Plaintiff's counsel the opportunity to submit case law for the court's review following the hearing, the trial court ultimately denied Defendant's motion to dismiss but made no findings of fact in its order.

*Treaties generally*

The effect that international legal agreements entered into by the United States have upon domestic law are dependent upon the nature of the agreement; namely, whether the agreement is self-executing or non-self-executing.

International treaties are considered "self-executing" if they have the force of law without the need for subsequent legislative action. *See, e.g., Medellin v. Texas*, 552 U.S. 491, 575 n.2 (2008) ("What we mean by 'self-executing' is that the treaty has automatic domestic effect as federal law upon ratification."); *Cook v. United States*, 288 U.S. 102, 119 (1933) ("For in a strict sense the [t]reaty was self-executing, in that no legislation was necessary to authorize executive action pursuant to its provisions.").

Treaties that are not considered self-executing are understood to require implementing legislation to provide legal authority to carry out the functions and obligations contemplated by the agreement, or to make them enforceable in court by private parties. *See, e.g., Medellin*, 552 U.S. at 505 ("In sum, while treaties may comprise international commitments . . . they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms.") (internal citations and quotations omitted). In fact, some courts have held that as a general rule non-self-executing treaties do not confer any judicially enforceable rights whatsoever.[6]

---

[5] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361.

[6] Curtis A. Bradley, *International Law in the U.S. Legal System* 44 (Oxford Univ. Press 2013); *United States v. Jiminez-Nava*, 243 F.3d 192, 195 (5th Cir. 2001) (treaties "do not generally create rights that are enforceable in the courts").

*The Hague Convention*

The Hague Convention became effective in the United States on February 10, 1969. The intention of the signatory nations to the Hague Convention was to provide a simpler way for parties to serve process abroad.

As a ratified treaty, the Hague Convention is of equal dignity with acts of Congress and enjoys the constitutional status of "supreme Law of the Land." U.S. Const. art. VI, cl. 2; *Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 373 (7th Cir.1985). The Convention states that it "**shall** apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, art. 1 (emphasis added). Therefore, the United States Supreme Court has held the Hague Convention is a self-executing treaty,[7] and thus preempts inconsistent methods of service prescribed by state law in all cases to which it applies; namely, all civil or commercial matters "where there is occasion to transmit a judicial or extrajudicial document for service abroad." *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698-99 (1988).

To help simplify the process, the Hague Convention provides several methods to accomplish service, and the principal method for service under the Hague Convention is through the designated Central Authority. Hague Convention arts. 2-6, 8-11, 19. However, the Hague Convention is expressly inapplicable in cases where the location of the person to be served is unknown.[8]

---

[7] The Hague Convention is considered a self-executing treaty. *See, e.g.*, *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 575 (4th Cir. 1983) (finding the Hague Convention to be self-executing because it imposes affirmative and judicially enforceable obligations without requiring implementing legislation); *Ex parte Volkswagenwerk Aktiengesellschaft*, 443 So. 2d 880, 882 (Ala. 1983) (recognizing that the Hague Service Convention is "the supreme law of the land" (quoting *Am. Trust Co. v. Smyth*, 247 F.2d 149, 153 (9th Cir. 1957)). *See also Dr. Ing. H.C.F. Porsche A.G. v. Superior Court*, 177 Cal. Rptr. 3d 155, 156 n.1 (Cal. Ct. App. 1981) (noting that a convention has the status of a treaty).

[8] Assuming, for the sake of argument, that a defendant is located within a country that is a party to the Hague Convention, the Convention "shall not apply where the address of the person to be served with the document is not known." Hague Convention, art. 1, 20 U.S.T. 361 (1969); *see also BP Prods. N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006) ("The Hague Convention does not apply in cases where the address of the foreign party to be served is unknown.").

4

Colombia was not a party to the Hague Convention during the time in question. Although Colombia acceded to the Hague Convention and became a signatory to it on April 10, 2013, it did not enter into force until November 1, 2013,[9] following the events of this case.

*The IASC*

The IASC was signed on January 30, 1975, and amended by the Additional Protocol thereto on May 8, 1979.[10] Both the United States and Colombia are signatories to the Convention.[11]

The IASC sets forth procedures for obtaining service of process over individuals in the signatory nations, stating that:

> This Convention shall apply to letters rogatory, issued in conjunction with proceedings in civil and commercial matters held before the appropriate judicial or other adjudicatory authority of one of the States Parties to this Convention, that have as their purpose:
>
> a. The performance of procedural acts of a merely formal nature, such as service of process, summonses or subpoenas abroad;

Section II, article 2, at 1.[12] The IASC provides that each party state designate a Central Authority to perform the functions assigned to it in the treaty, similar to the provision contained in the Hague Convention. *Id.* at 16. The IASC further provides that "[l]etters rogatory shall be executed in accordance with the laws and procedural rules of the State of destination."

---

[9] Hague Convention on Private International Law, http://www.hcch.net/index_en.php?act=conventions.status&cid=17

[10] S. TREATY DOC. No. 27, 98th Cong., 2d Sess. (1984).

[11] A Convention has the status of a treaty. *See, e.g., Dr. Ing. H.C.F. Porsche A.G. v. Superior Court,* 177 Cal. Rptr. 3d 155, 156 n.1 (Cal. Ct. App. 1981).

[12] A letter rogatory or letter of request is a formal request from a court to a foreign court for some type of judicial assistance. *See, e.g.,* Florida Rule of Civil Procedure 1.300(b) relating to foreign country depositions.

*Application of the IASC to Florida courts*

Florida courts may accept any particular method of service, so long as it does not contradict any self-executing international agreement or implementing statutes, or as long as such method is not expressly prohibited by the law of the foreign state. *See TracFone Wireless, Inc. v. Distelec Distribuciones Electronicas, S.A. de DV*, 268 F.R.D. 687, 690-91 (S.D. Fla. 2010) (holding that alternative methods for service in Honduras were available because such methods were not expressly prohibited by the foreign state's law, even if not expressly authorized under it); *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 923-24 (11th Cir. 2003) (service of process on defendant improper if served in a manner expressly prohibited by foreign state's law).

While compliance with the provisions of the Hague Convention may be mandatory, parties are not required to use all of the alternatives set forth in the IASC to the exclusion of any others. Several U.S. courts have held that the IASC is neither the exclusive nor mandatory channel for transmission of service of process between signatories. *See Paiz v. Castellanos*, No. 06-Civ-22046, 2006 WL 2578807, at *1 (S.D. Fla. Aug. 28, 2006) (collecting cases applying the IASC). As such, the IASC does not foreclose service by means outside the scope of its terms. Thus it is permissible to serve a defendant utilizing methods other than strict compliance with the IASC. *Kreimerman v. Casa Veerkamp, S.A.*, 22 F.3d 634, 647 (5th Cir. 1994) (noting that nothing in the language of the IASC expressly reflects an intention to supplant all alternative methods of service; "We simply hold that the Inter-American Convention on Letters Rogatory does not foreclose other methods of service among parties residing in different signatory nations, if otherwise proper and efficacious."), *cert. denied*, 513 U.S. 1016, 115 S. Ct. 577 (1994); *Jon D. Derrevere, P.A. v. Mirabella Found.*, No. 6:10–cv–925–Orl–28DAB, 2011 WL 1983352, at *2 (M.D. Fla. Apr. 26, 2011) ("Other courts have found that the Inter-American Convention's provisions regarding service of process are neither mandatory nor exclusive."); *Paiz*, 2006 WL 2578807, at *1 ("As have other courts which have considered the issue, this Court finds that the Inter-American Convention's provisions regarding service of process are neither mandatory nor exclusive." (citing cases)); *Hein v. Cuprum, S.A. de CV*, 136 F. Supp. 2d 63, 70 (N.D.N.Y. 2001) ("The Inter-American Convention on Letters Rogatory is not the exclusive means to serve process on defendant . . . ."); *Pizzabiocche v. Vinelli*, 772 F.Supp. 1245, 1249 (M.D. Fla. 1991) (noting that the Inter-American Convention "states that it shall apply to letters rogatory . . . [but] it does not state that letters rogatory are the only means of serving process in the signatory countries"); *Mayatextil, S.A. v. Liztex U.S.A., Inc.*, No. 92 CIV. 4528(SS), 1994 WL 198696, at *5

(S.D.N.Y. May 19, 1994) (Sotomayor, D.J.) ("The [IASC] Convention merely provides one possible method of service, however. It is neither mandatory nor exclusive."; service of process that did not comply with Inter-American Convention was not a basis for repudiating alternative method of service authorized by court order); *In re Romero v. Ramirez*, 100 A.D.3d 909, 910, 955 N.Y.S.2d 353, 354 (N.Y. App. Div. 2012) ("'[T]he Inter-American Convention permits alternate methods of service and . . . its procedures are not the exclusive means of service of process on defendants residing in a signatory nation.'"); *Laino v. Cuprum S.A. de C.V.*, 235 A.D.2d 25, 31, 663 N.Y.S.2d 275, 279 (N.Y. App. Div. 1997) ("[T]he methods described in the Inter-American Convention are not the exclusive means of effecting service, the rule permits alternative means of service."); 1 V. Nanda & D. Pansius, *Litigation of International Disputes in U.S. Courts* §§ 2:10, 2:15 (2013).

Therefore, it is clear that the IASC (unlike the Hague Convention) is not a self-executing treaty, and without the aid of any enacting legislative provisions, is not the equivalent to an act of the legislature, does not have the status of supreme Law of the Land, and is without controlling force. As a result, strict compliance with the provisions of the IASC, to the exclusion of utilizing any other methods, is not required.

In contrast, when the Hague Convention entered force between Colombia and the United States on November 1, 2013, it became the mandatory channel for effecting service of process between the two countries in all cases where the Hague Convention applies. In those cases where no binding international treaty governs service of process, a party must look instead to Florida's service of process rules.

For proper service on Defendant in Colombia prior to November 1, 2013, the trial court was permitted to accept compliance with either: (1) the IASC, since Colombia was not a signatory to the Hague Convention during the relevant time period; (2) the law of Colombia providing for appropriate methods of serving process upon its citizens; or (3) any method provided for by either the Florida Statutes or Florida Rules of Procedure. *See Ackermann v. Levine*, 788 F.2d 830, 840 (2d Cir. 1986) (courts may look to the forum's law for guidance on service issues that are not addressed by either the Hague Convention or the IASC).

Florida law generally requires personal service to confer *in personam* jurisdiction in actions for personal money judgments. *See Bedford Computer Corp. v. Graphic Press, Inc.*, 484 So. 2d 1225, 1227 (Fla. 1986); *see also Zieman v. Cosio*, 578 So. 2d 332, 333 (Fla. 3d DCA 1991). Section 48.193(3), Florida Statutes (2013), states that persons outside of Florida

7

who are subject to the jurisdiction of Florida's courts may be served "as provided in s. 48.194." The relevant provision of section 48.194, Florida Statutes (2013), is subsection (1), which reads, in pertinent part, as follows: "Service of process on persons outside the United States may be required to conform to the provisions of the Hague Convention . . . ." Therefore, even if the Hague Convention were not a self-executing treaty, section 48.194(1) serves as the legislative pronouncement sufficient for its implementation as the law in Florida.

Plaintiff's service of process upon Defendant was valid if it was perfected prior to November 1, 2013, in accordance with one of the three options indicated. This would include service according to sections 48.161 and 48.181, Florida Statutes, because the Hague Convention did not yet apply between the U.S. and Colombia, and strict compliance with the IASC was not required.

*Substitute service under sections 48.161, 48.171 and 48.181*

In certain circumstances, substitute service of process may be effected upon either a nonresident or a party who conceals his or her whereabouts. The method for effecting substitute process on parties is outlined in sections 48.161, 48.171 and 48.181.

Section 48.161 requires substituted service be evidenced by: (1) registered or certified mailing to the nonresident of (a) a notice of such substituted service and (b) a copy of the process, which must be evidenced by (c) the filing of the nonresident's return receipt and (d) an affidavit of compliance by plaintiff or his or her attorney; or (2) an appropriate officer's return showing service on the nonresident within or without the state of Florida. § 48.161, Fla. Stat. (2013); *Conde v. Prof'l Mediquip of Fla., Inc.*, 436 So. 2d 322, 323 (Fla. 4th DCA 1983) (*citing P.S.R. Assocs. v. Artcraft-Heath*, 364 So. 2d 855, 857-58 (Fla. 2d DCA 1978)).

Section 48.181 sets forth the jurisdictional requirements for substituted service of process. These requirements are that "the defendant conducts business in Florida and is either a (1) non-resident, (2) resident of Florida who subsequently became a non-resident, or (3) resident of Florida concealing his or her whereabouts." *Pinero v. Yam Margate, L.L.C.*, 825 F. Supp. 2d 1264, 1265 (S.D. Fla. 2011) (citing § 48.181, Fla. Stat. (2011)).

Under Section 48.171, the Secretary of State is the designated agent for a non-resident defendant who has caused injury by the operation of a motor vehicle within the state. *See Chapman v. Sheffield*, 750 So. 2d 140, 142 (Fla. 1st DCA 2000).

8

Non-resident motorists have a duty to make their whereabouts known in the event of an accident, and a defendant's attempt to conceal their whereabouts will not preclude the courts from obtaining jurisdiction over them.  As the Second District Court of Appeal has held:

> With a society as mobile as ours, when a non-resident motor vehicle owner or operator, or a resident owner or operator who subsequently becomes a non-resident or conceals his whereabouts, accepts the privilege of the public highways of the state and is involved in an accident, he has a duty not to conceal his whereabouts and to let his whereabouts be known so that any one involved in such accident and sustaining injury or damage may come into court and seek redress. If such an owner or operator conceals his whereabouts and makes it impossible for an aggrieved party to serve him with notice by registered mail as provided by the statute and such aggrieved party shows that he has used due diligence in endeavoring to make service, this will not prevent the Court from obtaining jurisdiction over such owner or operator.

*Fernandez v. Chamberlin*, 201 So. 2d 781, 785 (Fla. 2d DCA 1967).

Before using the substitute service statutes, a plaintiff must "demonstrate the exercise of due diligence in attempting to locate the defendant." *Wiggam v. Bamford*, 562 So. 2d 389, 391 (Fla. 4th DCA 1990). In *Wiggam*, this court indicated how this due diligence requirement could be satisfied:

> The test [for determining the sufficiency of constructive or substitute service] is not whether it was in fact possible to effect personal service in a given case, but whether the [plaintiff] reasonably employed knowledge at [her] command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire the information necessary to enable [her] to effect personal service on the defendant.

*Id.* (internal citations omitted).

Defendant contends that Plaintiff failed to comply with these statutes by not filing a postal receipt with the court.  While sections 48.161 and 48.171 create an exception to the general rule that the defendant must be personally served, s*ee Wyatt v. Haese*, 649 So. 2d 905 (Fla. 4th DCA 1995), and each statute must be strictly construed, *see id.; Linn v. Kidd*, 714 So.

9

2d 1185 (Fla. 1st DCA 1998); *Gloucester Eng'g, Inc. v. Mendoza*, 489 So. 2d 141 (Fla. 3d DCA 1986), the court may dispense with the filing of a postal receipt if the substituted service statute is invoked on the ground that the defendant is evading service. *See Robb v. Picarelli*, 319 So. 2d 645, 646 (Fla. 3d DCA 1975); *Fernandez*, 201 So. 2d at 785.

*Due diligence*

Plaintiff contends that he diligently complied with the statutes on substituted service and was still unable to locate and confirm proper service on Defendant. As a result, Defendant never received the process mailed to her, depriving Plaintiff of the ability to file a return receipt.

Unfortunately, the trial court failed to make findings of fact on the issue of whether Plaintiff's efforts at compliance were diligent. Although in most cases we would consider remanding these matters back to the trial court to make such findings, the standard of review of a trial court's denial of both a motion to dismiss for lack of personal jurisdiction and ineffective service of process is *de novo*. *Robles-Martinez v. Diaz, Reus & Targ, LLP*, 88 So. 3d 177, 179 (Fla. 3d DCA 2011); *Am. Express Ins. Servs. Europe Ltd. v. Duvall*, 972 So. 2d 1035, 1038 (Fla. 3d DCA 2008).

Here, there are sufficient facts that appear from a consideration of the entire record to justify the applicability of sections 48.161 and 48.171. *Robb*, 319 So. 2d at 646. The record reflects that Plaintiff persistently searched for Defendant in Colombia, and first attempted to serve her when he filed his complaint in 2009. However, the address and driver's license number Defendant supplied to the rental car company and to the police for the accident report were incorrect, and there was no other information to establish where she was located. Plaintiff sought information from Alamo, scheduled five separate hearings and prevailed upon the trial judge at each hearing to compel discovery from them regarding this information. Although Plaintiff discontinued his search efforts for a little over two years while the case was in federal court and on appeal, Plaintiff's search resumed when the case returned to the trial court.

The record also reflects that Plaintiff hired two separate attorneys to try and find Defendant in Colombia. Plaintiff provided these attorneys with Defendant's driver's license number from the police report, her date of birth and her supposed address, yet neither attorney was able to locate her. When one of the retained attorneys found someone through social media who he believed was Defendant, Plaintiff sent a copy of the summons and complaint to this person's work address by registered mail,

but did not receive a return receipt and was not able to track the mailing outside the United States.

We believe that Plaintiff's efforts were duly diligent where efforts were made to hire two separate attorneys to investigate Defendant's whereabouts, multiple requests for further information from the rental car company were made, and the use of social media was employed when all else failed. Other attempts to contact Defendant at the address she provided both to Alamo and to the police at the scene of the accident were unsuccessful. Further, Defendant's location outside the United States, in Colombia, South America, also greatly impeded the logistics of the search efforts as well as attempts at personal service. Under the facts of this case, it is clear that Plaintiff made conscientious efforts appropriate to the circumstances to obtain service on a defendant who could be deemed to be actively avoiding personal service. *Wiggam*, 562 So. 2d at 391. As such, the requirement that Plaintiff file a return receipt is excusable. *See Robb*, 319 So. 2d at 646; *Fernandez*, 201 So. 2d at 785.

*Late filed affidavit of compliance*

Defendant asserts that the affidavit of compliance was filed after the court-imposed deadline and should have been stricken. Here, Plaintiff's counsel explained to the court that his legal assistant accidentally misplaced the affidavit and failed to serve it, or have it timely filed. Upon realizing the error, the affidavit was served and filed six days after it was due. Plaintiff later moved for the court to accept the late filing, or in the alternative for an extension of time. The motion also requested that the trial court consider Plaintiff's affidavit of compliance to be timely filed, based on affidavits filed by Plaintiff's counsel and his legal assistant that explained the mistake.

Pursuant to section 48.161, "the affidavit of the plaintiff or his or her attorney of compliance shall be filed on or before the return day of the process *or within such time as the court allows . . . .*" § 48.161 (emphasis added). Also, under Florida Rule of Civil Procedure 1.090, a trial court may accept a late filing if good cause is shown. In denying Defendant's motion to dismiss, the trial court in this case acted properly in exercising its discretion by accepting Plaintiff's untimely affidavit.

*Rule 1.070(j)*

Defendant contends that the trial court erred by denying her motion to dismiss this case pursuant to Florida Rule of Civil Procedure 1.070(j). "The purpose of Rule 1.070(j) is to prevent a plaintiff from filing a lawsuit but

taking no action to move forward on the claim." *Gardina v. Aronowitz*, 899 So. 2d 1248, 1250 (Fla. 4th DCA 2005) (citing *Nationsbank, N.A. v. Ziner*, 726 So. 2d 364, 366 (Fla. 4th DCA 1999)). We reiterate, as we have stated in the past, that rule 1.070(j) "'is not intended to be a trap for the unwary, nor a rule to impose a secondary statute of limitations based on time of service. . . . We instead understand the rule to be an administrative tool to efficiently move cases through the courts.'" *Gary J. Rotella & Assoc., P.A. v. Andrews*, 821 So. 2d 468, 469 (Fla. 4th DCA 2002) (quoting *Sneed v. H.B. Daniel Constr. Co.*, 678 So. 2d 158, 159 (Fla. 5th DCA 1996)).

We have also held that the extraordinary effort of a defendant's evasiveness can provide good cause to extend the time for service under rule 1.070(j). *Moore v. McCluskey*, 875 So. 2d 760, 762 (Fla. 4th DCA 2004). Although Defendant correctly points out that six years have passed since the subject accident, the time has been filled with continuous efforts by Plaintiff and his attorney to comply with Florida law and to serve Defendant. Also, this case has been removed to federal court and remanded, and has come to this court once before on appeal. The information needed to litigate the claim never got "stale," because Alamo fully deposed Plaintiff, and conducted discovery to which Plaintiff responded.

Based on the extraordinary circumstances in this case, the trial court acted within its discretion when it granted Plaintiff several extensions of time to search for Defendant, and did not err by denying Defendant's motion to dismiss.

*Affirmed.*

WARNER and CONNER, JJ., concur.

*   *   *

***Not final until disposition of timely filed motion for rehearing.***