DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SOCIETE HELLIN, S.A.,** a Panamanian corporation,
and **FRANCISCO MORILLO,**
Appellants,

v.

**VALLEY COMMERCIAL CAPITAL, LLC,** a New Jersey limited liability
company,
Appellee.

No. 4D18-772

[September 12, 2018]

Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David Haimes, Judge; L.T. Case No. 12-015474 (8).

Melissa B. Coffey and Joshua M. Hawkes of Foley & Lardner LLP, Tallahassee, for appellants.

M. Hope Keating of Greenberg Traurig, P.A., Tallahassee, and Bridget Ann Berry and Lauren R. Whetstone of Greenberg Traurig, P.A., West Palm Beach, for appellee.

PER CURIAM.

The defendants appeal from a non-final order denying their motion to quash substitute service of process. Because the plaintiff failed to exercise due diligence in attempting to locate and serve the defendants, we reverse.[1]

### *Facts*

The plaintiff, Valley Commercial Capital, LLC ("VCC"), sued the defendants in May 2012 after they defaulted on an aircraft lease and guaranty. The complaint alleged that defendant Societe Hellin, S.A. ("SH")

---

[1] We do not reach defendants' arguments that plaintiff failed to comply with section 48.161's technical requirements for substitute service or that defendant Morillo was required to be served according to the Hague Convention.

was a Panamanian corporation and defendant Francisco Morillo ("Morillo") was a dual citizen of Venezuela and France. VCC sought to effect service on Morillo both in his individual capacity and in his representative capacity vis-à-vis SH. The summonses for both defendants were issued using a Venezuelan address identified in the lease as SH's address.

In January 2013, VCC moved for an extension of time to serve the defendants. It asserted that it had made multiple unsuccessful attempts to serve them and was attempting to serve them in Panama and Venezuela, but did not describe these service attempts.

In February 2013, VCC hired a private investigator, who found that Morillo maintained a condo on Brickell Avenue in Miami. Based on this information, instead of trying to serve defendants in Venezuela or Panama, between February and April 2013, VCC focused on serving Morillo at the Brickell condo. Unsuccessful, VCC suspended its efforts until July 2014, when it heard that Morillo was back in Miami. VCC still could not locate Morillo, but it served his wife at the Brickell condo in July 2014.

Defendants moved to quash the service, arguing that it was ineffective because Morillo was not a co-resident with his wife at the Brickell condo. The trial court granted the motion, finding that Morillo did not reside there.

In 2015, VCC served discovery on defendants. Defendants produced a copy of SH's 2003 articles of incorporation, which indicated that SH's president and secretary were located in Miami and disclosed the address of SH's registered agent in Panama. VCC also deposed Morillo's wife, who confirmed that Morillo did not reside at the Brickell condo.

In July 2016, VCC filed a motion to permit substitute service on defendants. While that motion was pending, VCC again made several service attempts at the Brickell condo, but was still unsuccessful.[2] In February 2017, a hearing was held on VCC's motion to use substitute service. The trial court commented: "At some point [VCC] needs to bring [defendants] to court and [has] to get service somehow" and "What are they supposed to do, go serve him in Venezuela?" The court then granted VCC's motion for substitute service. Accordingly, VCC served the Secretary of State and sent the notice of service and a copy of the process to defendants at eight different addresses. Defendants moved to quash the substitute service, arguing, among other things, that VCC failed to exercise due

_____

[2] In October 2016, VCC served the president and secretary identified in SH's 2003 articles of incorporation. Defendants moved to quash that service; the motion appears to be pending.

2

diligence to locate and serve defendants and that VCC failed to comply with the technical statutory requirements for substitute service. The trial court denied the motion to quash. Defendants appealed.

## *Analysis*

The general rule in Florida is that a defendant must be personally served. *See Alvarado-Fernandez v. Mazoff*, 151 So. 3d 8, 17 (Fla. 4th DCA 2014). However, there are exceptions to that rule. For instance, as relevant to this case, section 48.181, Florida Statutes (2012), authorizes substitute service on nonresident defendants doing business in Florida where the cause of action arises from the defendant's Florida business activities. *Pelycado Onroerend Goed B.V. v. Ruthenberg*, 635 So. 2d 1001, 1003 (Fla. 5th DCA 1994).

"Before using the substitute service statutes, a plaintiff must 'demonstrate the exercise of due diligence in attempting to locate the defendant.'" *Alvarado-Fernandez*, 151 So. 3d at 16 (quoting *Wiggam v. Bamford*, 562 So. 2d 389, 391 (Fla. 4th DCA 1990)); *see also Coastal Capital Venture, LLC v. Integrity Staffing Sols., Inc.*, 153 So. 3d 283, 285 (Fla. 2d DCA 2014) ("Substitute service is unauthorized if personal service could be obtained through reasonable diligence.").

> The test [for determining the sufficiency of constructive or substitute service] is not whether it was in fact possible to effect personal service in a given case, but whether the [plaintiff] reasonably employed knowledge at [her] command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire the information necessary to enable [her] to effect personal service on the defendant.

*Alvarado-Fernandez*, 151 So. 3d at 17 (alterations in original) (quoting *Wiggam*, 562 So. 2d at 391).

A common theme in cases holding that the plaintiff failed to exercise due diligence is that "the plaintiff faile[d] to follow an 'obvious' lead." *Dubois v. Butler ex rel. Butler*, 901 So. 2d 1029, 1030 (Fla. 4th DCA 2005). In *Dubois*, the parties were in a car accident in 2000, but the plaintiff did not sue the defendant until 2003. *Id.* at 1031. The plaintiff attempted to serve the defendant only at the address listed on the nearly three-year-old accident report. *Id.* Other than that, the plaintiff merely checked telephone listings for the defendant. *Id.* This court held that the plaintiff failed to use due diligence to justify substitute service. *Id.*

In *Coastal Capital*, the plaintiff made repeated attempts to serve the defendants at their condo in Sarasota even though the plaintiff knew that

3

the defendants were on an extended business trip in California. 153 So. 3d at 285. There, the plaintiff was in contact with one of the defendants but failed to ask him where he could be served. *Id.* at 285. The Second District held that "[o]bviously, the necessary diligence is not established by repeatedly sending a process server to an address when the resident is known to be out of town." *Id.*

In *Knabb v. Morris*, 492 So. 2d 839 (Fla. 5th DCA 1986), after a car accident, the plaintiff hired an investigator who attempted service at three different addresses. The plaintiff also checked the telephone directory, the postal service, and several utility companies before attempting substitute service. *Id.* at 840-41. The Fifth District held that those efforts did not constitute due diligence because the plaintiff ignored certain obvious leads, including the vehicle accident report which contained the addresses of the occupants of the defendant's car, who the plaintiff could have contacted to inquire about the defendant's whereabouts. *Id.*

In *Alvarado-Fernandez*, on the other hand, after a car accident, the plaintiff repeatedly tried to serve the defendant in Colombia, where the defendant was a citizen. 151 So. 3d at 17. The plaintiff used the address and driver's license number that the defendant had supplied to her rental car company, but that information was incorrect. *Id.* The plaintiff sought discovery from the rental car company, hired two separate attorneys to try and find the defendant in Colombia, and investigated social media, but could not locate the defendant. *Id.* Under these facts, this court held that the plaintiff's efforts were duly diligent so as to justify substitute service. *Id.* at 18.

This case is distinguishable from *Alvarado-Fernandez* and aligns more with the cases in which the plaintiff failed to follow an "obvious lead." While the record here does indicate that VCC made substantial efforts to locate and serve defendants, those efforts were nearly all directed at the Brickell condo. Although Morillo did visit and maintain the Brickell condo, he did not reside there, as VCC had learned during the wife's deposition in 2015 and the court had found in 2016.

Repeated attempts at service on the wrong location do not amount to due diligence. *See Coastal Capital*, 153 So. 3d at 285; *Robinson v. Cornelius*, 377 So. 2d 776, 778 (Fla. 4th DCA 1979) (finding due diligence was not shown where the plaintiff knew that the defendant did not reside at a particular address but attempted service there on multiple occasions); *cf. Delancy v. Tobias*, 26 So. 3d 77, 79 (Fla. 3d DCA 2010) (finding that due diligence was established where plaintiff attempted service twenty-two times at the correct address, but was unable to effect service because it was a gated residence).

Here, there is no evidence in the record showing that VCC made any attempt to locate or serve defendants in Venezuela or Panama. While this court in *Alvarado-Fernandez* acknowledged that the defendant's location in Colombia "greatly impeded the logistics of the search efforts as well as attempts at personal service," 151 So. 3d at 18, it also relied on the plaintiff's efforts to locate and serve the defendant in Colombia in finding that the plaintiff exercised due diligence. *Id.*

In contrast, here, at the time it filed the complaint, VCC had the Venezuelan address listed for SH on the lease. It even sent a demand letter there. In July 2015, defendants produced SH's articles of incorporation, which disclosed other Miami and Venezuelan addresses for SH's directors and a Panamanian address for SH's registered agent. Yet the record contains no evidence of any personal service attempts at the Venezuelan addresses or at the registered agent's address in Panama.

At the hearing on VCC's motion to permit substitute service, the trial court asked, "What are they supposed to do, go serve him in Venezuela?" In response to this question, we note that while VCC did not have to serve Morillo in Venezuela, it did have to engage in duly diligent efforts to effect personal service upon him. "Because personal service is contemplated under Florida law, serving a defendant in another country necessarily requires 'the transmittal of documents abroad' . . . ." *Puigbo v. Medex Trading, LLC*, 209 So. 3d 598, 601 (Fla. 3d DCA 2014) (citation omitted); *see also Godsell v. United Guar. Residential Ins.*, 923 So. 2d 1209, 1215 (Fla. 5th DCA 2006) (finding no due diligence where plaintiff was informed that defendant lived in Canada, but made no effort to discover her Canadian address).

Because the record shows no efforts to locate and serve defendants in Venezuela or Panama, and instead reflects that VCC single-mindedly focused on the Brickell condo where Morillo sometimes stayed but did not reside, we reverse.

*Reversed and remanded.*

WARNER, LEVINE and KLINGENSMITH, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***